[Cite as *Caserta v. Ohio Job & Family Servs.*, 2012-Ohio-5097.]

IN THE COURT OF APPEALS OF GREENE COUNTY, OHIO

CHRISTINA M. CASERTA          :

    Plaintiff-Appellant          :          C.A. CASE NO. 2011-CA-63

vs.          :          T.C. CASE NO. 2011-CV-517

DIRECTOR OHIO JOB & FAMILY          :          (Civil appeal from the
SERVICES, ET AL.              Common Pleas Court)
       :

    Defendant-Appellee

. . . . . . . . .

**O P I N I O N**

Rendered on the    2nd    day of    November   , 2012.

. . . . . . . . .

WILBURN L. BAKER, Atty. Reg. No. 0076844, 1423 Research Park Drive, Beavercreek, Ohio 45432
    Attorney for Plaintiff-Appellant

YVONNE TERTEL, Atty. Reg. No. 0019033, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215
    Attorney for Defendant-Appellee Ohio Job & Family Services

DOUGLAS D. BRANNON, Atty. Reg. No. 0076603, 130 West Second Street, Suite 900, Dayton, Ohio 45402
    Attorney for Defendant-Appellee Brannon & Associates

. . . . . . . . .

FROELICH, J.

{¶ 1}    Christina M. Caserta appeals from a judgment of the Greene County Court of Common Pleas, which affirmed the decision of the Unemployment Compensation Review Commission denying her unemployment compensation benefits because she had been terminated by her employer for just cause. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 2}    The testimony and exhibits before the Unemployment Compensation Review Commission hearing officer reveal the following facts.

{¶ 3}    From January 23, 2004 until August 20, 2010, Caserta was employed by Dwight D. Brannon's law firm, Brannon & Associates, as a legal secretary. On Thursday, August 12, 2010, James Parsons, a client of the firm, came to the office and paid $750 as a retainer. Caserta accepted the payment from Parsons and wrote him a receipt for $750 on firm letterhead. Caserta testified that Parsons provided the payment in an envelope and that she did not look inside the envelope before writing the receipt. Caserta indicated that she was very busy that day and that she relied on the representations of a firm attorney (who found Caserta in the copy room and asked her to write Parsons a receipt) and of Parsons that there was a check for $750. Caserta stated that, "on a normal day, [she] would have opened [the envelope], checked it." Caserta stated that she made a copy of the receipt, clipped it to the envelope, and placed them in her desk. Attorney Douglas Brannon testified that it was office policy to verify that the check was "an acceptable form of payment" (i.e, properly prepared and dated) before it was accepted, make a copy of the check, place the copy in the client's file, and give the check to the office manager.

{¶ 4}    In contrast to Caserta's testimony, Parsons testified that he gave Caserta $750 in cash and that he did not use an envelope. Parsons did not recall at the hearing whether Caserta counted the money before giving him a receipt, but his prior affidavit reflected that she had. Dwight Brannon testified that it was the firm's policy that any cash received would be given to an attorney in the law firm or the office manager.

{¶ 5}    Later that day, Caserta informed Douglas Brannon that Parsons had paid the retainer. Douglas Brannon testified that he questioned Caserta about the payment and she "sort of dodged the questions a few times." Caserta eventually told him that Parsons had paid in cash and that the money had been given to Dwight Brannon. Douglas Brannon testified that he spoke with his father, Dwight, later that evening and Dwight Brannon stated that he had not received the cash. Dwight Brannon indicated to Douglas Brannon that he would ask Caserta what happened to the retainer. In her testimony, Caserta agreed that she told Douglas Brannon that Parsons had paid the retainer; however, she denied telling him that she had given cash to Dwight Brannon.

{¶ 6}    The following day, Dwight Brannon questioned Caserta about Parson's payment. Caserta assured him that Parsons had paid with a check. She told him that the check was in her desk in an envelope. Caserta testified that she still assumed the payment was in the form of a check; she had not yet looked inside the envelope.

{¶ 7}    Three days later, on Monday, August 16, 2010, Caserta reported to Douglas Brannon that Parsons had come to the office and exchanged the check for $750 in cash. Caserta acknowledged at the hearing that this statement to Douglas Brannon was not

truthful. According to Caserta, she discovered that morning that the envelope in her desk contained cash rather than a check. She believed that she would be criticized and yelled at by Dwight Brannon if she reported the truth. It is undisputed that Caserta provided the $750 in cash to Douglas Brannon that morning.

{¶ 8} Dwight Brannon subsequently contacted Parsons regarding his payment. Parsons told Brannon that he gave cash to Caserta and that she counted the cash before giving him a receipt. Dwight Brannon then confronted Caserta concerning Parsons's statements. Caserta admitted to Dwight Brannon that she had not been truthful with Douglas Brannon when she indicated that Parsons had exchanged his check for cash. Caserta was discharged by Dwight Brannon because he suspected that she was attempting to steal money and for not being truthful when questioned about her actions. Caserta acknowledged at the hearing that her job required "strict honesty," that it was important that she be able to handle cash, and that office policy required her to turn cash over to an attorney or the office manager when it was received.

{¶ 9} Caserta applied for and was granted unemployment compensation benefits from the Ohio Department of Job and Family Services. Dwight Brannon appealed, and the Director's Redetermination affirmed the initial decision. Brannon appealed the Director's Redetermination, and the matter was transferred to the Unemployment Compensation Review Commission.

{¶ 10} A hearing was held on March 11, 2011. In a written decision, the hearing officer concluded that Dwight Brannon did not establish that Caserta stole money or

attempted to steal money from the law firm. He found, however, that Caserta had lied on Monday, August 16, 2010, when she "reported to Douglas Brannon that Parsons had come to the office and exchanged the check for $750 in cash." The hearing officer did not make explicit factual findings regarding the credibility of the witnesses or, specifically, whether Parsons had used an envelope when making his payment, whether Caserta had counted the cash when it was received, or whether Caserta knowingly misrepresented that she had received a check when she was questioned about the payment by the Brannons on August 12 and 13.

{¶ 11} The hearing officer concluded that the evidence established that Caserta "was not truthful when informing an attorney of the situation that had not occurred." He wrote that Caserta's employer "had a right to expect an individual working in a law firm to be truthful regarding the payment of fees by clients," and that Caserta's failure to do so constituted misconduct. The hearing officer thus concluded that Caserta's discharge was for just cause in connection with her work. The Director's Redetermination was reversed, and Caserta was ordered to repay the unemployment compensation benefits that she had received.

{¶ 12} Caserta requested a review of the hearing officer's decision before the Unemployment Compensation Review Commission. Caserta's Request for Review was disallowed. Caserta subsequently appealed to the Greene County Court of Common Pleas. The court reviewed the administrative record, accepted briefs from the parties, and heard oral argument on the issues. The trial court concluded that the Review Commission's

decision was "not unlawful, unreasonable or against the manifest weight of the evidence," and that based on the administrative record, the Review Commission properly found that Caserta had been dismissed for just cause.

{¶ 13} The trial court provided a detailed explanation of its findings at the conclusion of the oral hearing held on September 30, 2011. First, the court went through the hearing officer's findings and identified the support for those findings by referencing specific portions of the transcript of the administrative hearing. Second, the trial court rejected Caserta's claim that Dwight Brannon had not appealed the granting of unemployment benefits due to alleged untruthfulness by Caserta, noting that Brannon had mentioned untruthfulness in his September 2010 appeal. Third, the trial court explained that the hearing officer's finding of just cause was not unlawful, unreasonable, or against the manifest weight of the evidence, because Caserta had not told "one white lie." The court stated that it "counted" multiple lies by Caserta, including (1) on August 12, Caserta told Douglas Brannon that Parsons had paid $750 with a check, (2) Caserta told Douglas Brannon that she had received cash and had given it to Dwight Brannon, (3) on August 13, Caserta said that she received a check, and (4) Caserta told her employer that the check was exchanged for $750 in cash. The trial court explained that there was "not just one little white lie here. There's a whole series of lies over a period of three business days." It continued:

> A law firm by its nature operates to uphold the law. Honesty and
> integrity are important norms in the operation of a law firm. And Ms.

Caserta admits this on page 49 of her transcript she says: *"Would you say that the job involves strict honesty?"* That's line 25 and line 26 she says: *"Correct."*

But there's more, the relationship between an attorney and his or her staff is one of trust and confidence. I practiced law for twenty-seven years, privately. I'm aware of what goes on in a law office and what the nature of that trust is. Once that relationship is broken by a staff member being untruthful continued employment is not in the best interest of the law firm. Knowledge that the claimant's dishonesty in this case violated law office norms, but it also put the firm's attorney client relations at risk by dragging Mr. Parsons into this situation. Claimant, by her actions, demonstrated an unreasonable disregard for her employer's best interest. The employer was reasonable in finding fault on the behalf of the claimant and accordingly terminated her with just cause.

After reviewing the certified record provided by the commission and considering all the arguments I do not find that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence. * * *

(Emphasis sic.)

{¶ 14} Caserta appeals from the trial court's affirmance of the Unemployment Compensation Review Commission's denial of unemployment benefits.

II.

**{¶ 15}**  Caserta raises two assignments of error.  In her first assignment of error, Caserta claims that the trial court's decision was "unlawful, unreasonable and against the manifest weight of evidence," because the court made factual findings beyond those found by the hearing officer, namely that Caserta told multiple untruthful statements over the course of several business days.  Caserta's second assignment of error contends that the hearing officer's decision was unlawful, unreasonable, and against the manifest weight of the evidence because her actions did not constitute "just cause" for her dismissal.  We will address Caserta's claims in reverse order.

**{¶ 16}**  R.C. 4141.29 establishes the requirements for eligibility for unemployment compensation benefits.  Under that statute, a claimant is not eligible for benefits if he or she is discharged for "just cause in connection with the individual's work."  R.C. 4141.29(D)(2)(a).  "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985); *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 22.  "Just cause for discharge may be established by proof that the employee violated a specific company rule or policy, * * * so long as the policy was fair and fairly applied." *Jones v. Bd. of Review*, 10th Dist. Franklin No. 93AP-430 (Sept. 28, 1993).

**{¶ 17}**  The "just cause" determination must be made in light of the legislative purpose underlying the Unemployment Compensation Act.  *Williams* at ¶ 22.

"The [A]ct was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own."

\* \* \*

The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

(Citations omitted.) *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 697-698, 653 N.E.2d 1207 (1995). Nevertheless, we keep in mind that the unemployment compensation statute must be liberally construed in favor of awarding benefits to the applicant. *Clark Cty. Bd. of Mental Retardation & Dev. Disabilities v. Griffin*, 2d Dist. Clark No. 2006-CA-32, 2007-Ohio-1674, ¶ 10; R.C. 4141.46.

{¶ 18} "Each unemployment compensation case must be considered upon its particular merits in determining whether there was just cause for discharge." *Johnson v. Edgewood City School Dist. Bd. of Edn.,* 12th Dist. Butler No. CA2008-11-278, 2010-Ohio-3135, ¶ 14, citing *Warrensville Heights v. Jennings*, 58 Ohio St.3d 206, 207, 569 N.E.2d 489 (1991). The discharged employee bears the burden of persuasion to prove that he or she is entitled to unemployment compensation. *Silkert v. Ohio Dept. of Job & Family Servs.*, 184 Ohio App.3d 78, 2009-Ohio-4399, 919 N.E.2d 783, ¶ 36 (2d Dist.).

{¶ 19}   An appellate court's scope of review in employment compensation appeals is quite limited.  *Silkert* at ¶ 26.  An appellate court may reverse the Unemployment Compensation Review Commission's determination of "just cause" only if it is "unlawful, unreasonable or against the manifest weight of the evidence."  *Tzangas* at paragraph one of the syllabus.  "All reviewing courts, including common pleas, courts of appeal, and the Supreme Court of Ohio, have the same review power and cannot make factual findings or determine witness credibility."  *Silkert* at ¶ 26; *see also Williams* at ¶ 20.  The reviewing court must affirm the Review Commission's decision if it is supported by some competent, credible evidence.  *Williams* at ¶ 20.

{¶ 20}   Caserta claims that the Review Commission's finding of just cause was unlawful, unreasonable, and against the manifest weight of the evidence.  She states that she was discharged for dishonesty, which is addressed by R.C. 4141.29(D)(2)(e), and that she did not commit "substantive" acts of dishonesty, as required by the statute.

{¶ 21}  R.C. 4141.29(D)(2)(e) provides that no individual may be paid unemployment benefits, for the duration of his or her unemployment, if:

> The individual became unemployed because of dishonesty in connection with
>
> the individual's most recent or any base period work.  Remuneration earned
>
> in such work shall be excluded from the individual's total base period
>
> remuneration and qualifying weeks that otherwise would be credited to the
>
> individual for such work in the individual's base period shall not be credited
>
> for the purpose of determining the total benefits to which the individual is
>
> eligible and the weekly benefit amount to be paid under section 4141.30 of

the Revised Code. Such excluded remuneration and noncredited qualifying weeks shall be excluded from the calculation of the maximum amount to be charged, under division (D) of section 4141.24 and section 4141.33 of the Revised Code, against the accounts of the individual's base period employers. In addition, no benefits shall thereafter be paid to the individual based upon such excluded remuneration or noncredited qualifying weeks.

For purposes of division (D)(2)(e) of this section, "dishonesty" means the commission of substantive theft, fraud, or deceitful acts.

{¶ 22} The Review Commission based its decision on the finding that the law firm had "just cause" for Caserta's discharge. It stated that Caserta's failure to be truthful regarding the payment of fees by a client constituted misconduct and provided just cause for the termination of her employment. The Review Commission did not discuss R.C. 4141.29(D)(2)(e) or address Caserta's misconduct as "dishonesty" under that provision.

{¶ 23} We have found no case law that indicates that Caserta's untruthful statements to her employer were required to be addressed under R.C. 4141.29(D)(2)(e). To the contrary, numerous courts have found that lying to an employer or falsifying work-related records, contrary to the employer's policy, may constitute just cause under R.C. 4141.29(D)(2)(a). *E.g.*, *Hunt v. Ohio Dept. of Job & Family Serv.*, 5th Dist. Delaware No. 12CAH40024, 2012-Ohio-4359 (falsifying driver logs contrary to employer's policy and law constituted just cause for discharge); *Sharif v. Children's Hunger Alliance, Inc.*, 10th Dist. Franklin No. 10AP-796, 2011-Ohio-2049 (altering fire inspection report contrary to

employer's policy constituted just cause); *Oriana House v. Terrell*, 9th Dist. Summit No. 19550, 2000 WL 277906 (Mar. 15, 2000) (employee's lying regarding a work-related matter constituted both "substantive deceit" and "just cause" for her termination). Accordingly, we turn to whether the Review Commission reasonably concluded that Caserta's actions constituted "just cause" for her discharge.

{¶ 24} Upon review of the administrative record, there is competent, credible evidence to support the Review Commission's findings that Caserta accepted $750 from Parsons, that she wrote a receipt for that payment, and that she erroneously told the Brannons that Parsons had paid with a check. The record further supports the findings that, on August 16, Caserta lied to Douglas Brannon when she told him that Parsons had come to the office and exchanged the check for $750 in cash. When Dwight Brannon contacted Parsons, Parsons indicated that he had paid in cash and that Caserta had counted the cash before giving a receipt. Caserta acknowledged to Dwight Brannon (and reiterated at the hearing) that her prior statement about Parsons's exchanging the check for cash had not been truthful. As stated above, the hearing officer did not make any finding as to whether Caserta knew that she had received cash prior to August 16.

{¶ 25} Even accepting Caserta's version of events as true, the administrative record reflects that Caserta did not handle Parsons's payment in accordance with the law firm's policies regarding the receipt of cash and checks. Caserta did not verify the nature or amount of the payment when she received it from Parsons, and she did not follow the procedures for ensuring proper documentation of the payment (i.e., she did not turn the

money over to an attorney, as required for cash payments, and she did not review and make a copy of the check, as required for payments by check). When Caserta realized on August 16 that she had misrepresented that the payment had been by check, she admittedly attempted to cover up her mistake by lying to her employer about how Parsons had made his payment and how she had come into possession of $750 in cash. Regardless of Caserta's reasons for making this statement, Caserta's untruthfulness did not conform to the "strict honesty" that was required of Brannon & Associates's employees, and it displayed a lack of trustworthiness with respect to her ability to handle cash, which she acknowledged was required.

{¶ 26} We disagree with Caserta's assertion that her untruthful statement was "insubstantial" and was merely "a minor infraction" of the law firm's policy. Although no money was lost due to Caserta's handling of Parsons's payment, her attempt to hide her mishandling of the money reflected both an unwillingness to acknowledge her mistakes to her employer and untrustworthiness with respect to monetary payments. As such, the Review Commission reasonably concluded that Caserta's failure to be truthful constituted misconduct and just cause for her termination.

{¶ 27} The second assignment of error is without merit.

{¶ 28} Caserta's first assignment of error asks us to review the trial court's reasons for upholding the Review Commission's decision. She claims that the trial court made specific factual findings that were not made by the hearing officer and that the trial judge relied on evidence outside the record when he discussed his own personal experience as a

private attorney in rendering his decision. In determining whether the trial court properly affirmed the denial of Caserta's claim for unemployment compensation benefits, our duty is to focus on the Review Commission's decision and determine whether that decision is supported by competent, credible evidence and is not unlawful, unreasonable, or against the manifest weight of the evidence. While a trial judge should not consider personal experiences which are not in the record, this does not affect the evidence before the Review Commission. Because we agree with the trial court's ultimate conclusion to affirm the Review Commission's decision, the first assignment of error is overruled as moot.

III.

{¶ 29} The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J., and HENDON, J., concur.
(Hon. Sylvia Sieve Hendon, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Wilburn L. Baker, Esq.
Yvonne Tertel, Esq.
Douglas D. Brannon, Esq.
Hon. Michael A. Buckwalter