[Cite as *Clark v. Ohio Dept. of Job & Family Servs.*, 2012-Ohio-5311.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

JOEY L. CLARK                                     :
                                                  :          Appellate Case No. 25257
        Plaintiff-Appellant                       :
                                                  :          Trial Court Case No. 11-CV-7231
v.                                                :
                                                  :
OHIO DEPARTMENT OF JOB &                          :          (Civil Appeal from
FAMILY SERVICES, et al.                           :           Common Pleas Court)
                                                  :
        Defendant-Appellee                        :
                                                  :

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of November, 2012.

. . . . . . . . . .

JOEY L. CLARK, 720 North Commerce Street, Lewisburg, Ohio 45338
        Plaintiff-Appellant, *pro se*

MICHAEL DeWINE, Atty. Reg. #0009181, by MICHELLE T. SUTTER, Atty. Reg. #0013880, Health and Human Services Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215-3400
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Joey L. Clark appeals pro se from the trial court's May 31, 2012 decision, entry, and order affirming an administrative decision upholding the denial of her application

for unemployment benefits.

{¶ 2} The record reflects that Clark's former employer, Good Samaritan Hospital & Health Center, terminated her employment on February 3, 2011. At the time of her employment, Clark worked as a "patient access associate." Her termination represented the culmination of a five-step correction action process. The misconduct that precipitated her discharge involved turning away a patient without a manager's approval and checking a text message on her cell phone while in a patient-care area.

{¶ 3} Following her termination, Clark applied for unemployment benefits. Her application initially was approved. The Office of Unemployment Compensation found that Good Samaritan had discharged her without just cause. Upon redetermination at Good Samaritan's request, the benefit approval was affirmed. Good Samaritan then appealed to the Unemployment Compensation Review Commission. The case proceeded to a telephone hearing at which two witnesses testified: Clark and her former supervisor, Denise Langston. After hearing from the two women, the Review Commission denied Clark's claim. The Review Commission's decision contained the following factual findings:

> Claimant was employed by Good Samaritan Hospital & Health Center, Inc. from August 15, 1988 until February 3, 2011. At the time of her separation, she was employed as a Patient Access Associate.

> Claimant had been placed on an action plan on June 1, 2010, due to ongoing performance issues. She was then given warnings for her performance on June 23, 2010, August 5, 2010 and September 7, 2010. Claimant was aware of each of these warnings, and knew that her job was in jeopardy due to her performance.

On January 25, 2011, claimant was working at the registration desk when a patient came in for her EEG. Claimant was confused about what day it was, and told the patient that she did not have an appointment scheduled for that day. Claimant did not speak to management before turning the patient away as required. The patient went home, and had to come back later that day to have her EEG completed. That same day, claimant was seen checking her text messages on her cell phone. Per the employer's policy, employees are not to have their personal cell phones out for any reason while at work. Only company issued pagers are permitted to be used.

Based on these infractions, and claimant's prior warnings, she was discharged on February 3, 2011.

{¶ 4} After making these factual findings, the Review Commission reasoned:

Claimant had received several warnings for policy violations, and was aware that her job was in jeopardy if her performance did not improve. Claimant then turned away a patient without following the proper procedure, when the patient did in fact have a scheduled appointment. She also violated the employer's cell phone policy. The employer has shown that claimant violated known and reasonable policies, and that her discharge was for just cause.

In light of the information presented in this case, the Hearing Officer finds that claimant was discharged by Good Samaritan Hospital & Health Center, Inc. for just cause in connection with work.

Based upon this finding, claimant received benefits to which she was

not entitled and is required to repay those benefits to the Ohio Department of Job and Family Services.

{¶ 5}    Clark appealed the Review Commission's decision to the trial court. On May 31, 2012, the trial court affirmed the Review Commission's denial of unemployment benefits. In relevant part, the trial court reasoned:

Here, Appellant-Clark ignored the Hospital's clear prohibition against 1) using her cell phone while in a patient care area and 2) failing to consult with management before "turning away" the EEG patient.

The Court finds the prohibition against cell phone usage in patient care areas reasonable and consistent with the stated policy of providing high quality patient care. Langston testified that the registration area is clearly a patient care area as "all registration does is deal with a patient one-on-one." Therefore, Appellant-Clark's suggestion that the patient registration area is not a patient care area is unpersuasive, particularly since the prohibition furthers the Hospital's interests. Appellant-Clark's "turning away" of the EEG patient in violation of Hospital policy was also in clear contravention of the Hospital's interests.

Based upon the Court's review of the record including Appellant-Clark's admissions, it is clear she was on notice that her job was in jeopardy and was well-aware of the Hospital policies at issue. Despite her precarious job situation, Appellant-Clark disregarded Hospital policies, thereby threatening the Hospital's best interests. In short, [there is] ample evidence in

the record that supports the Review Commission's decision that Appellant-Clark was terminated by the Hospital for just cause.

(Doc. #18 at 4-5).

{¶ 6}  Our appellate review of a denial of unemployment benefits is limited. *Johnson v. SK Tech.*, Inc., 2d Dist. Montgomery No. 23522, 2010-Ohio-3449, ¶18, citing *Silkert v. Ohio Dept. of Job & Family Services*, 184 Ohio App.3d 78, 2009-Ohio-4399, 919 N.E.2d 783, ¶26 (2d Dist.). "An appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 1995-Ohio-206, 653 N.E.2d 1207, paragraph one of the syllabus. "All reviewing courts, including common pleas, courts of appeal, and the Supreme Court of Ohio, have the same review power and cannot make factual findings or determine witness credibility. * * * However, these courts 'do have the duty to determine whether the board's decision is supported by evidence in the record.'" *Silkert* at ¶26, quoting *Tzangas*.

{¶ 7}  Ohio Revised Code Section 4141.29 establishes the eligibility requirements for unemployment benefits. A claimant is ineligible if she is discharged for "just cause" in connection with her work. R.C. 4141.29(D)(2)(a). The issue before us is whether the Unemployment Compensation Board of Review's determination that Good Samaritan discharged Clark for just cause is supported by the manifest weight of the evidence, or, conversely, whether it is unlawful or unreasonable. "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17, 482

N.E.2d 587 (1985).

{¶ 8}    Although Clark's pro se brief lacks assignments of error, we will attempt to address her arguments. Clark first asserts that her termination was handled in an "unprofessional manner" and that her termination letter was not prepared on company letterhead. She also claims she did not "intentionally" turn away a patient in violation of company policy. These arguments do not persuade us that her termination was without just cause. The allegedly unprofessional manner in which Clark was discharged is not relevant to the just-cause issue. Nor is Clark's claim that her violation of company policy was unintentional. The Review Commission found that she was confused about the date and that she turned away a scheduled patient without first consulting a supervisor. Although Clark claims she had a "misunderstanding," the evidence before the Review Commission established that any misunderstanding would have been resolved if Clark had contacted management, as required by Good Samaritan's written policy, before turning the patient away.

{¶ 9}    Clark next asserts that the registration area where she was working is not a "patient-care area." Therefore, she argues that Good Samaritan's written cell-phone policy did not require her to have her cell phone turned off. In testimony before the Review Commission, however, supervisor Denise Langston stated otherwise. In light of Langston's testimony, the record supports a finding that Clark violated Good Samaritan's policy by having the phone turned on and by using it in a patient-care area to check a text message.

{¶ 10}   Clark also notes that after she pursued a grievance, Good Samaritan upheld her termination but changed her status to "provisional," which made her eligible to be considered for re-employment. She then points out that Good Samaritan has failed to re-hire

her even though she has applied for numerous jobs. These facts have no bearing on whether Good Samaritan had just cause to discharge Clark in the first place.

**{¶ 11}** Clark next contends she felt like she was being "harassed" by management during her final months at Good Samaritan. However, in her testimony before the Review Commission, she did not cite the alleged instances of harassment. Nor did she attempt to argue that her termination was the product of some animus against her rather than the result of her violations of Good Samaritan's policies. On the record before us, Clark's claim that she felt harassed fails to persuade us that she was terminated without just cause.

**{¶ 12}** Finally, Clark argues that she was a good long-term employee, that she did not have a history of consistent disciplinary action, and that she was unaware she could have filed grievances at earlier steps in Good Samaritan's five-step corrective action process. Once again, these assertions have no bearing on the just-cause issue before us. Despite Clark's prior work history and her professed lack of knowledge about grievances, the record establishes that her termination represented the culmination of a five-step correction action process. Moreover, the evidence before the Review Commission supports a finding that she engaged in the misconduct that led to her discharge at step five, to wit: turning away a patient without a manager's approval and checking a text message on her cell phone while in a patient-care area.

**{¶ 13}** Having reviewed the record, we cannot say the Review Commission's finding that Good Samaritan had just cause to discharge Clark was unlawful, unreasonable, or against the weight of the evidence. The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and FAIN, J., concur.


Copies mailed to:

Joey L. Clark
Michael DeWine
Michelle T. Sutter
Hon. Steven K. Dankof