[Cite as *Cassaro v. Ohio Dept. of Job & Family Servs.*, 2016-Ohio-7643.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

SEAN CASSARO,

      PLAINTIFF-APPELLANT,              CASE NO.  3-16-08

      v.

OHIO DEPARTMENT OF JOB AND
FAMILY SERVICES, ET AL.,             O P I N I O N

      DEFENDANTS-APPELLEES.


**Appeal from Crawford County Common Pleas Court**
**Trial Court No. 15-CV-0136**

**Judgment Affirmed**

**Date of Decision:   November 7, 2016**


**APPEARANCES:**

    *Daniel H. Klos* **for Appellant**

    *Eric A. Baum* **for Appellees**

**PRESTON, J.**

{¶1} Claimant-appellant, Sean Cassaro ("Cassaro"), appeals the judgment of the Crawford County Court of Common Pleas affirming the Unemployment Compensation Review Commission's ("Commission") determination disallowing Cassaro's request for unemployment compensation benefits. For the reasons that follow, we affirm.

{¶2} Cassaro's employment as an engineering technician with the City of Bucyrus, Ohio ("City") was terminated on October 6, 2014. (Doc. No. 23); (Doc. No. 12, Ex. A). After his employment was terminated, Cassaro filed for unemployment compensation benefits. (Doc. No. 12, Ex. A).

{¶3} On October 27, 2014, the Ohio Department of Job & Family Services ("ODJFS") approved Cassaro's application for unemployment compensation benefits after concluding that, based on that application, Cassaro "was discharged without just cause under [R.C.] 4141.29(D)(2)(a)." (*Id.*). On November 12, 2014, the City appealed ODJFS's decision approving Cassaro's application for unemployment compensation benefits. (*Id.*). On December 5, 2015, ODJFS issued its redetermination affirming its October 27, 2014 determination. (*Id.*). The City appealed ODJFS's December 5, 2015 redetermination on December 22, 2014. (*Id.*).

{¶4} On December 23, 2014, the City's appeal was transferred to the Commission for review. (Doc. No. 12, Ex. B). After telephone hearings on January

13, 2015 and February 9, 2015, the Commission issued its decision on March 5, 2015 reversing ODJFS's determination. (*Id.*). On March 24, 2015, Cassaro requested that the Commission review its March 5, 2015 decision. (*Id.*). On April 15, 2015, the Commission denied Cassaro's request for review. (*Id.*).

{¶5} On May 12, 2015, Cassaro, pro se,[1] appealed to the Crawford County Court of Common Pleas the Commission's denial of his request for review of its March 5, 2015 decision denying Cassaro's application for unemployment compensation benefits. (Doc. No. 1). Cassaro's appeal named as parties ODJFS, the Commission, Gregory Gantt, Sylvester Patton, Ed Good, Cynthia C. Dungey, and Joyce M. Schifer (collectively "appellees"). (*Id.*). On May 26, 2015, the Director of ODJFS requested that the trial court remove the Commission and its individual commissioners and members—Gregory Gantt, Sylvester Patton, and Ed Good—as parties to Cassaro's appeal, which was granted on July 23, 2015. (Doc. Nos. 11, 14).

{¶6} Appellees filed the administrative file on June 1, 2015. (Doc. No. 12). Cassaro filed his brief on August 27, 2015. (Doc. No. 17). Appellees filed their brief on October 7, 2015. (Doc. No. 19). Cassaro filed his reply brief on October 30, 2015. (Doc. No. 21).

---

[1] Cassaro obtained legal counsel on May 26, 2015. (Doc. No. 9).

{¶7} The trial court denied Cassaro's appeal on May 9, 2016. (Doc. No. 23). On May 19, 2016, the trial court issued a detailed entry denying Cassaro's appeal and affirming the March 5, 2015 decision of the Commission. (Doc. No. 24).

{¶8} Cassaro filed his notice of appeal on June 3, 2016. (Doc. No. 25). He raises one assignment of error for our review.

### Assignment of Error

**The Common Pleas Court committed reversible error when it affirmed the decision of the Unemployment Compensation Board of Review that found Mr. Cassaro was terminated with good cause.**

{¶9} In his assignment of error, Cassaro argues that the trial court erred by affirming the Commission's decision denying his application for unemployment compensation benefits because there is no "reliable, probative, and substantial evidence" supporting the Commission's determination that Cassaro was terminated from his employment for "good cause." (Appellant's Brief at 13).

{¶10} R.C. 4141.29 governs the eligibility for unemployment compensation benefits. *Clark v. Ohio Dept. of Job & Family Servs.*, 2d Dist. Montgomery No. 25257, 2012-Ohio-5311, ¶ 7. A claimant is ineligible for unemployment compensation benefits if he or she is discharged from his or her employment for "just cause." *Id.*, citing R.C. 4141.29(D)(2)(a).

{¶11} "A just-cause determination must be consistent with the legislative purpose underlying the Unemployment Compensation Act: to provide financial

assistance to individuals who are involuntarily unemployed through no fault or agreement of their own." *Hicks v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 13AP-902, 2014-Ohio-2735, ¶ 33, citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697 (1995). "'When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection.'" *Id.*, quoting *Tzangas, Plakas & Mannos* at 697-698. "Accordingly, just cause under the Unemployment Compensation Act is predicated upon employee fault." *Id.*, citing *Tzangas, Plakas & Mannos* at 698.

{¶12} "Our appellate review of a denial of unemployment benefits is limited." *Clark* at ¶ 6, citing *Johnson v. SK Tech., Inc.*, 2d Dist. Montgomery No. 23522, 2010-Ohio-3449, ¶ 18, citing *Silkert v. Ohio Dept. of Job & Family Servs.*, 184 Ohio App.3d 78, 2009-Ohio-4399, ¶ 26 (2d Dist.). "A reviewing court may reverse a just-cause determination by the commission only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Hicks* at ¶ 13, citing R.C. 4141.282(H) and *Tzangas, Plakas & Mannos* at paragraph one of the syllabus. "The reviewing court may not make factual findings or determine a witness's credibility." *Id.*, citing *Williams v. Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 20. "The court 'must affirm the commission's finding if

some competent, credible evidence in the record supports it.'" *Id.*, quoting *Williams* at ¶ 20. "'The focus of an appellate court when reviewing an unemployment compensation appeal is upon the commission's decision, not the trial court's decision.'" *Id.*, quoting *Mustafa v. St. Vincent Family Ctrs., Inc.*, 10th Dist. Franklin No. 12AP-305, 2012-Ohio-5775, ¶ 6.

**{¶13}** Accordingly, the issue before us is whether the Commission's determination that the City discharged Cassaro for just cause is supported by some competent, credible evidence, or, conversely, whether it is unlawful, unreasonable, or against the manifest weight of the evidence. *See Clark* at ¶ 7. The Commission issued its decision on March 5, 2015 denying Cassaro's application for unemployment compensation benefits after concluding that Cassaro was discharged from his employment for just cause. (Doc. No. 12, Ex. B). The Commission found that Cassaro

> advised a local contractor to fill a manhole with concrete without first conducting an inspection and reviewing city records. If [Cassaro] had exercised the due diligence required, he would have realized that the manhole was actually used for drainage and not an old coal bin. [Cassaro] was not truthful when the [City] questioned him about what he told the contractor. His failure to conduct the necessary inspection and untruthfulness cost the [City] $5,000.00.

(*Id.*). The Commission further found that Cassaro "accused a local business person of receiving stolen property [and that Cassaro] made the accusation in front of another employee." (*Id.*). Based on those findings, the Commission concluded that Cassaro's "conduct constitutes cause sufficient to justify his discharge [and] the City of Bucyrus discharged [Cassaro] for just cause in connection with work." (*Id.*).

{¶14} After reviewing the record, we conclude that there is some competent, credible evidence supporting the Commission's determination that Cassaro was discharged from his employment for just cause. *See Hicks*, 2014-Ohio-2735, at ¶ 34. That is, the Commission's determination that Cassaro was terminated from his employment for just cause was neither unlawful, unreasonable, nor against the manifest weight of the evidence. *See id.* at ¶ 36.

{¶15} "Just cause is conduct that would lead a person of ordinary intelligence to conclude the surrounding circumstances justified the employee's discharge." *Id.* at ¶ 33, citing *Chambers v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 06AP-1043, 2007-Ohio-1493, ¶ 7. "'Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" *Clark* at ¶ 7, quoting *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17 (1985). "Just cause for discharge exists where "'the employee, by his actions, demonstrated an unreasonable disregard for his employer's best interests.'"" *Hicks* at ¶ 33, quoting *Mayes v. Bd. of Review, Ohio*

*Bur. of Emp. Servs.*, 32 Ohio App.3d 68 (10th Dist.1986), quoting *Kiikka v. Ohio Bur. of Unemp. Servs.*, 21 Ohio App.3d 168, 169 (8th Dist.1985).

**{¶16}** "[N]umerous courts have found that lying to an employer or falsifying work-related records * * * may constitute just cause under R.C. 4141.29(D)(2)(a)." *Caserta v. Ohio Dept. of Job & Family Servs.*, 2d Dist. Greene No. 2011-CA-63, 2012-Ohio-5097, ¶ 23, citing *Hunt v. Ohio Dept. of Job & Family Servs.*, 5th Dist. Delaware No. 12CAH40024, 2012-Ohio-4359, *Sharif v. Children's Hunger Alliance, Inc.*, 10th Dist. Franklin No. 10AP-796, 2011-Ohio-2049, and *Oriana House v. Terrell*, 9th Dist. Summit No. 19550, 2000 WL 277906 (Mar. 15, 2000). Likewise, "courts have repeatedly held that a discharge is considered for just cause when an employee's conduct demonstrates some degree of fault, such as behavior that displays an unreasonable disregard for his employer's best interests." *Markovich v. Employers Unity, Inc.*, 9th Dist. Summit No. 21826, 2004-Ohio-4193, ¶ 8, citing *Tzangas, Plakas & Mannos*, 73 Ohio St.3d 694, at paragraph two of the syllabus, *Kiikka* at paragraph two of the syllabus, and *Sellers v. Bd. of Rev.*, 1 Ohio App.3d 161 (10th Dist.1981), paragraph two of the syllabus.

**{¶17}** The Commission conducted two telephone hearings on January 13, 2015 and February 9, 2015. At the January 13, 2015 hearing, Jeff Wagner ("Wagner"), the Service Safety Director for the City testified on behalf of the City. (Jan. 13, 2015 Tr. at 5, 8). He testified that he manages the employees of the City,

including Cassaro. (*Id.* at 8). Wagner testified that Cassaro was discharged from his employment with the City "because he gave out false information. He basically lied." (*Id.* at 9). Specifically, Cassaro provided false information regarding work that he was charged with overseeing for the City, and Cassaro denied an accusation that he slandered a local business leader. (*Id.*).

{¶18} First, Wagner testified that Cassaro was sent to inspect a sidewalk, which was being repaired by a local contractor. (*Id.* at 10). According to Wagner, Cassaro and the contractor discussed a manhole located on the sidewalk being repaired by the contractor. (*Id.*). Wagner testified that Cassaro and the contractor looked in the manhole, and, without checking any records, Cassaro indicated to the contractor that the manhole was "an old coal bin" and instructed the contractor to fill in the manhole with concrete and stone. (*Id.* at 10-11, 12). After a rainstorm, it was discovered that the manhole was actually a sewer because "sewer and water" from the rainstorm backed up into the basement of the building adjacent to the sidewalk that was being repaired. (*Id.* at 11-14). To correct the issue, the contractor had to "jackhammer" the concrete out of the sewer line and the City "had to dig up the street to fix the problem." (*Id.* at 14-15). According to Wagner, fixing the sewer line cost the City "roughly around $5000." (*Id.* at 18).

{¶19} Wagner testified that he "asked for a statement of what happened" from Cassaro. (*Id.*). The City also obtained statements from the contractor and the

owner of the building indicating that Cassaro told them that the manhole was an old coal bin and that it could be filled with concrete. (*Id.* at 20-21). Indeed, the contractor's statement, which is included as an exhibit in the administrative file, indicates that Cassaro told him that the manhole was "an old coal chute," that "the city preferred that they were filled up because they were a hazard," and "to pour any extra concrete in that hole to [sic] and then top it off with stone so we could remove cover [sic] and replace walk concrete." (Doc. No. 12, Exs. A, B). The contractor's statement further indicates, "We looked into the manhole in front of [the adjacent business] with [Cassaro], it had a small square hole in the bottom that we assumed was an auger for coal." (*Id.*). The adjacent business owner's statement indicates that the contractor told him that "Cassaro said the manhole covered an old coal chute and could be filled." (*Id.*).

{¶20} While the City was repairing the sewer line, the City became aware of "a second incident after that, on another matter" involving Cassaro. (Jan. 13, 2015 Tr. at 18-19). Regarding the second incident, Cassaro, while in the City's zoning and engineering office after a city planning meeting,—in the presence of the City's zoning administrator, John Rostash ("Rostash")—accused the owner of Central Ohio Recycling and Salvage, Clay Korner ("Korner"), of buying stolen property. (*Id.* at 21-22). Wagner testified that Korner sent a letter to the City stating his intention to sue the city based on Cassaro's statements. (*Id.* at 23). According to

Wagner, when asked about the statements he made about Korner, Cassaro "denied or had no response to" those questions. (*Id.*). Wagner testified that Cassaro wrote in his planner that Korner accused him of slandering him. (*Id.*). Cassaro's planner was provided to the Commission for review. (Doc. No. 12, Exs. A, B). Wagner further testified that Cassaro never admitted that he made the statements about Korner. (Jan. 13, 2015 Tr. at 23).

**{¶21}** As a result of Cassaro's conduct underlying both incidents, he was suspended pending investigation. (*Id.* at 24). After a meeting "to go over the allegations" "through the union," Cassaro was terminated for "providing false information and lying [] in the investigation." (*Id.*).

**{¶22}** At the February 9, 2015 hearing, Wagner offered further testimony on behalf of the City. (Feb. 9, 2015 Tr. at 4). Wagner testified that Cassaro was dishonest in his written statement regarding the sewer-line incident. (*Id.* at 6). Indeed, in the written statement provided to Wagner by Cassaro, which is included as an exhibit in the administrative file, Cassaro explained that, regarding the sewer-line incident, the contractor "asked me what exactly the manhole was. I told him I did not know, but historically they have been cisterns, coal bins, or other unknown structures." (Doc. No. 12, Exs. A, B). The remainder of Cassaro's written statement indicates that he told the contractor to verify that the manhole was an old coal bin or cistern before proceeding, and also indicates that he discussed with the contractor

the City's previous actions regarding abandoned coal bins and cisterns. (*Id.*). Cassaro also indicates in his written statement that the contractor told him that "he screwed up" by filling the manhole with concrete. (*Id.*). Cassaro further indicates in his written statement that the contractor told him that "when he looked in the pit it had water in it. He said it did not smell and it appeared to be just water in the bottom of the pit. Since he had concrete left[,] they decided to fill the area with concrete. He said he made the statement to his men 'gee I hope we never have to dig this up.'" (*Id.*). Cassaro reiterates in his written statement that the contractor asked him what the manhole was in front of the adjacent building and that Cassaro responded that he did not know "probably a cistern or a coal bin"; however, Cassaro asserts that "[n]o decision was made during this discussion since no one knew what was below." (*Id.*).

{¶23} Wagner further testified that Cassaro denied accusing Korner of buying stolen items. (Feb. 9, 2015 Tr. at 7). Wagner testified that Cassaro was terminated from his employment after the City determined that Cassaro falsified his reports regarding those incidents. (*Id.*).

{¶24} Rostash testified that Cassaro said—in Rostash's presence—that Korner "was buying stolen copper from you know nefarious people in the city[.]" (*Id.* at 44-45). He further testified that Korner was "very offended" by Cassaro's accusation. (*Id.* at 46). According to Rostash, Cassaro later acknowledged to him

that Korner was "really upset" by Cassaro's accusation. (*Id.* at 47). Rostash filed an incident report detailing Cassaro's statements regarding Korner. (Doc. No. 12, Ex. A). Korner's attorney sent a letter to the City confirming that Rostash's incident report "is true and accurate." (*Id.*).

{¶25} Cassaro testified on his own behalf and maintained that he did not tell the contractor that the manhole was a coal bin or that he could fill it with concrete. (Feb. 9, 2015 Tr. at 16, 19-22). Cassaro testified that, because the contractor did not obtain a permit or conduct "underground utility locates," "the contractor [is] solely responsible for any damage that he caused with [] negligence of his work." (*Id.* at 22-23).

{¶26} Cassaro also maintained that he did not *accuse* Korner of buying stolen copper. (*Id.* at 30-31). Indeed, when directly asked whether he stated that Korner was buying stolen copper, Cassaro testified, "No I did not." (*Id.* at 31-32). Rather, Cassaro minimized the statement he made about Korner. (*See id.* at 30-32). He testified, in part, "It says that I accused somebody of doing something, but in the city's investigation from their letter September 17 that clearly states yes, Mr. Davis stole scrap copper. Yes Mr. [K]orner bought the copper and it says [] that the [sic] Mr. [K]orner received a restitution check so as far as any slander, I'm not sure you know what happened there." (*Id.* at 31).

**{¶27}** On appeal, Cassaro argues that his version of events is more credible than the City's version of events. As such, he argues that the Commission's decision is against the manifest weight of the evidence and that the Commission's decision "is supported by no evidence at all." (Appellant's Brief at 17). As we stated above, it is not the function of this court to reweigh the evidence. *See Hicks*, 2014-Ohio-2735, at ¶ 13. "Moreover, even where evidence exists to support the arguments of both an employer and an employee as to the cause for termination, it is our duty to determine only whether the commission's determination of just cause for termination was unlawful, unreasonable or against the manifest weight of the evidence. *Id.* at ¶ 35, citing *Bennett v. Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 11AP-1029, 2012-Ohio-2327, ¶ 19. "This is so even in cases where a determination by the commission in favor of either party could have been lawful, reasonable, and based upon sufficient weight." *Id.*, citing *Bennett* at ¶ 19. "That is, '[w]here the commission might reasonably decide either way, the courts have no authority to upset the commission's decision.'" *Id.*, quoting *Chambers*, 2007-Ohio-1493, at ¶ 10, citing *Irvine*, 19 Ohio St.3d 15.

**{¶28}** Cassaro also argues on appeal that his termination was unconstitutional under Ohio's civil service system because his termination was "extra discipline." (Appellant's Brief at 15). Cassaro's argument is meritless because whether he was properly terminated under Ohio's civil service laws has no

bearing on the determination of his eligibility for unemployment compensation. *See Guy v. Steubenville*, 147 Ohio App.3d 142, 2002-Ohio-849, ¶ 29 (7th Dist.) (concluding that "the two proceedings are completely separate and distinct, and a ruling in the disciplinary appeal is not binding" on a determination of eligibility for unemployment compensation), citing *Adams v. Harding Mach. Co., Inc.*, 56 Ohio App.3d 150 (3d Dist.1989). *See also Johnson v. Edgewood City Sch. Dist. Bd. of Edn.*, 12th Dist. Butler No. CA2008-11-278, 2010-Ohio-3135, ¶ 19 ("Specifically, unemployment compensation and termination of a civil service employee have separate procedures, legal considerations and remedies."), citing *James v. Ohio State Unemp. Rev. Comm.*, 10th Dist. Franklin No. 08AP-976, 2009-Ohio-5120, ¶ 16; *In re Claim of Guy*, 146 Ohio App.3d 20, 26-27 (7th Dist.2001) ("Essentially, the civil service commission determines whether the employee should remain employed by a municipality, whereas the [Commission] determines whether the decision to terminate an employee was based upon just cause. Thus, the [Commissions] need only accept the civil service commission determination as evidence and place upon it whatever weight it chooses as the trier of fact.").

{¶29} Based on our review of the record, there is some competent, credible evidence supporting the Commission's determination that Cassaro was discharged from his employment with the City for just cause—namely, there is some competent, credible evidence that Cassaro lied to the City or falsified work-related

records and that Cassaro's behavior displayed an unreasonable disregard for the City's best interests. As such, the Commission's decision is not unlawful, unreasonable, or against the manifest weight of the evidence.

**{¶30}** Cassaro's assignment of error is overruled.

**{¶31}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**