[Cite as *Tomlinson v. Ohio Dept. of Job & Family Servs.*, 2009-Ohio-3414.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

EARL B. TOMLINSON,

  PLAINTIFF-APPELLANT,          CASE NO. 1-09-02

  v.

OHIO DEPARTMENT OF JOB          O P I N I O N
  AND FAMILY SERVICES,

  DEFENDANT-APPELLEE.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2008-1027

Judgment Reversed and Cause Remanded

Date of Decision: July 13, 2009

APPEARANCES:

    *John C. Kennehan* **for Appellant**

    *Eric A. Baum* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Earl B. Tomlinson ("Tomlinson") brings this appeal from the judgment of the Court of Common Pleas of Allen County affirming the judgment of the Unemployment Compensation Review Commission ("the Commission"). The Commission had previously found that Tomlinson's employment was terminated for cause and he thus was ineligible for unemployment benefits. For the reasons set forth below, the judgment is reversed.

{¶2} On January 11, 2008, Tomlinson accidentally backed a city-owned truck into a car, which was parked illegally behind him. No citation was issued to Tomlinson and no reason to suspect Tomlinson was under the influence of alcohol or drugs was present. Tomlinson's employer, Custom Staffing ("CS") took Tomlinson to Lima Memorial Hospital for a drug screen. At the hospital Tomlinson produced a urine sample. The sample was rejected as being of insufficient volume to meet the lab's testing protocol. Tomlinson was instructed by the hospital to drink liquids and wait three hours for a retest. Eventually, Tomlinson chose to leave even though he was informed by the hospital that doing so would be a "refusal." No explanation of what a "refusal" would mean was given. Soon after leaving the hospital and returning to his employer, CS Area Manager, Rich Dorsett ("Dorsett") informed Tomlinson that he was fired for violating CS's drug policy.

{¶3} On January 15, 2008, Tomlinson filed for unemployment benefits. Tomlinson's application was disallowed by the Ohio Department of Job and Family Services ("ODJFS") finding that "the terms/conditions of an employment agreement required the drug test and/or that the employer had reasonable suspicion of drug use by the claimant, however, [Tomlinson] refused to submit to a drug test * * *." Director's File. Tomlinson appealed the determination on February 11, 2008, alleging that he had submitted to the drug test, but was unable to produce enough urine. ODJFS affirmed the prior determination on February 29, 2008. On March 7, 2008, Tomlinson appealed this decision. Alleging that he did submit to the drug test, that there was no reasonable suspicion of drug use, that he was not informed that if he left the hospital before noon he would be fired, and that Dorsett refused to allow him to return for a retest within the time provided by the hospital. Review Commission File. ODJFS transferred jurisdiction to the Commission on April 11, 2008.

{¶4} On April 24, 2008, Tomlinson's counsel sent a written request to ODJFS for copies of CS's drug testing policies and any documents indicating that Tomlinson had actually received the policy. On April 25, 2008, Tomlinson's counesl was informed that CS would not be allowed to rely upon any documents which were not provided to the Commission. No copy of the drug policy, written acknowledgment by Tomlinson indicating that he received the policy, or hospital

records were provided to the Commission.[1] On April 30, 2008, a telephone hearing was held. Tomlinson and his counsel participated in the hearing. Dorsett represented CS. During the hearing, Dorsett testified as to the contents of documents never presented to the commission, requested by Tomlinson, and never available for review by either Tomlinson or the hearing officer. On May 2, 2008, the Commission entered a decision affirming the determination.

{¶5} On May 20, 2008, Tomlinson requested a review. The request for a review was denied on June 10, 2008. On June 30, 2008, Tomlinson filed a notice of appeal in the Court of Common Pleas of Allen County, Ohio. That court issued its decision sustaining the decision of the Commission on December 17, 2008. Tomlinson then appealed to this court and raises the following assignments of error.

### First Assignment of Error

**The trial court erred as a matter of law in failing to find ODJFS ignored its own requirement that employers submit a written copy of drug testing policies and proof of employee notification.**

### Second Assignment of Error

**ODJFS deprived [Tomlinson] of a fair hearing, in violation of [R.C. 4141.281(C)(1)], by basing its decision entirely on the employer's uncorroborated hearsay, in conflict with [Tomlinson's] direct testimony.**

---

[1] A review of the Director's File indicates that CS claims to have provided these documents as attachments to ODJFS's questionnaire. The questions concerning these documents were marked with "see attached." However, no attachments appear in the record.

**{¶6}** When reviewing a decision from the Commission, the same standard of review is used by both this court and the common pleas court. *Mason v. Admr., Ohio Bur. of Emp. Serv., et al.* (Apr. 7, 2000), 1st Dist. No. C-990573. "We may reverse the commission's decision of 'just cause' only if we conclude that the decision was 'unlawful, unreasonable, or against the manifest weight of the evidence.'" Id. (citing *Tzangas Plaka & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207). Unemployment statutes are to be liberally construed in favor of the claimant. R.C. 4141.46. Thus, there is a clear legislative intent that employees are presumed to be entitled to benefits. *Abate v. Wheeling Pittsburgh Steel Corp.* (1998), 126 Ohio App.3d 742, 711 N.E.2d 299. Due to this presumption, this court chooses to address the second assignment of error first.

**{¶7}** In the second assignment of error, Tomlinson claims that he was denied a fair hearing. The Commission is required by statute to provide an opportunity for a fair hearing. R.C. 4141.281(C)(1). The hearing is the first opportunity for the parties to present their case in an adversarial setting. *Cunningham v. Jerry Spears Co.* (1963), 119 Ohio App.169, 197 N.E.2d 810. "A fair hearing contemplates * * * a hearing consistent with the principles of due process." *Forbes v. Libbey-Owens-Ford Glass Co.* (Mar. 16, 1979), 6th Dist. No. L-78-143." A fair hearing requires that the parties be allowed to present evidence and be allowed to effectively cross-examine the evidence presented by the other

side.  Id.  See also, *Cunningham*, supra and *General Motors Corp. v. Baker* (1952), 92 Ohio App. 301, 110 N.E.2d 12.  The fact that the Commission is not bound by the rules of evidence does not mean that the court can ignore them. *Cunningham*, supra.

> **Rules of evidence are not merely procedural or technical methods for the presentation of information.  They are in great part substantive principles as well, and represent standards for the evaluation of information-standards based on the cumulative human experience of over 600 years in the Anglo-American legal system.  Nor does the statutory exemption from "formal rules of procedure" permit unfair procedure.**
>
> **The basic philosophy of judicial procedure revolves around the principles of fairness, relevance, reliability and public policy. * * *  The principles remain even though their formulation as technical court rules may be inappropriate to the operation of this agency.  Further, the rules themselves remain as a starting point in determining whether there has been a violation of fundamental principles.  * * * [I]t is at the board level that a party must be accorded a hearing consistent with principles of due process.**

Id. at 174-75.  This court has previously held likewise.  See *Kirchner v. Fox Run-H.C.F., Inc.* (Sept. 24, 1986), 3d Dist. No. 5-85-23.  As a result, appellate courts have imposed some limitation on the unfettered use of hearsay testimony.  See *Kirchner*, supra; *Mason*, supra; *Taylor v. Bd. Of Review* (1984), 20 Ohio App.3d 297, 485 N.E.2d 287; *Isaac v. Admr., Ohio Bur. of Emp. Serv.* (Mar. 21, 1985), 8th Dist. No. 48850; *Green v. Invacare* (May 26, 1993), 9th Dist. No. 92CA175478; *Vickers v. Ohio State Bur. of Emp. Serv.* (Apr. 22, 1999), 10th Dist. No. 98AP-656; and *Royster v. Bd. of Review* (Apr. 13, 1990), 4th Dist. No. 98 CA 1826.  "In

the majority of cases where the issue has been raised, courts have concluded that it is unreasonable for a hearing officer to give more credence to uncorroborated hearsay evidence than to sworn testimony." *Mason*, supra.

> **[W]here the sworn testimony of a witness is contradicted only by hearsay evidence, to give credibility to the hearsay statement and to deny credibility to the claimant testifying in person is unreasonable. * * * thus, any weight to be given the employer's hearsay is clearly outweighed by the appellant's sworn testimony at the hearing before the referee.**

*Taylor*, supra at 299.

{¶8} Here, the only evidence presented by CS was the testimony of Dorsett. Dorsett's testimony was that the company had a policy, but he was not supposed to testify to the contents due to the failure of CS to provide a copy to the Commission. His testimony was that there was a policy and that Tomlinson violated it. Dorsett also testified to the contents of medical records from Lima Memorial Hospital, which also were not presented to the Commission. Dorsett finally testified that Tomlinson had received a copy of the drug policy and had signed an acknowledgment. This alleged signed acknowledgment was also not presented to the Commission. Tomlinson objected to this testimony because the records were not available for his review even though all of the documents were requested prior to the hearing. The Commission overruled the objection and permitted the testimony. On cross-examination, Dorsett admitted that there was no reason to suspect that Tomlinson was intoxicated at the time of the accident

and that no injuries resulted from the accident. Dorsett also admitted that the policy does not define an inability to produce a valid urine sample as a refusal.

{¶9} After Dorsett's testimony, Tomlinson testified. His testimony was that he never received a copy of the alleged drug policy and that he never signed an acknowledgment. Tomlinson testified he went to the hospital for the test at 9:00 and failed to provide a valid sample. He was instructed to drink water and submit to a second test at 12:00. He left at 11:00 after being warned there would be "consequences" for leaving. Tomlinson testified that he was unaware of what those consequences could be because he had not seen a policy. Upon learning that he was terminated upon his return to the office, he offered to immediately return for a test, but was told no. Tomlinson did admit that he signed a paper indicating that if he was injured, he would have to submit to a drug test before receiving worker's compensation for the injury. However, Tomlinson denied ever seeing any other drug policy.

{¶10} Based upon this evidence, the Commission determined that Tomlinson had violated the drug policy and was terminated for cause. However, the only evidence before the Commission as to the policy and Tomlinson's receipt of the policy was the testimony of Dorsett that there was a policy and that Tomlinson had violated it. The contents of the policy were never available for Tomlinson or even for the hearing officer's review. Dorsett testified as to the contents of various documents, but never provided those documents for review by

anyone. This court notes that since this was a telephone hearing, no one except Dorsett ever saw the documents upon which the Commission's decision is based. By denying Tomlinson access to these documents, he was prevented from conducting an effective cross-examination as he had no way of knowing what the contents of the documents were. This problem is compounded by the Commission basing its decision on the content of the documents which it had not ever seen, but was relying upon the hearsay testimony rather than the sworn testimony before it. This is a violation of Tomlinson's right to a fair hearing and due process. Thus, the trial court erred in affirming the decision of the Commission. The second assignment of error is sustained.

{¶11} Having found that Tomlinson was denied a fair hearing, the issue raised in the first assignment of error is moot and will not be addressed at this time. The judgment of the Court of Common Pleas of Allen County affirming the judgment of the Commission is reversed and the matter is remanded for further proceedings.

*Judgment Reversed*
*and Cause Remanded*

**ROGERS and SHAW, J.J., concur.**

**/jnc**