[Cite as *Kappan v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-4964.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| JANICE S. KAPPAN, | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | CASE NO. 2013-P-0008 |
| DIRECTOR, OHIO DEPT. OF JOB AND FAMILY SERVICES, et al., | : | |
| Appellee. | : | |
| | : | |

Administrative Appeal from the Portage County Court of Common Pleas, Case No. 2011 CV 01441.

Judgment: Reversed and remanded.

*Nancy E. Grim,* Nancy Grim, LLC, 136 N. Water Street, Suite 202, Kent, OH 44240 (For Appellant).

*Mike DeWine,* Ohio Attorney General, State Office Tower, 30 East Broad Street, Columbus, OH 43215 and *Susan M. Sheffield,* Assistant Attorney General, 20 West Federal Street, Third Floor, Youngstown, OH 44503 (For Appellee).

DIANE V. GRENDELL, J.

{¶1}   Appellant, Janice S. Kappan, appeals the Order and Journal Entry of the Portage County Court of Common Pleas, affirming the decision of the Ohio Unemployment Compensation Review Commission, denying her claim for unemployment benefits from her former employer, Schneller, LLC. The issues before us are whether a hearing officer may accept unsubstantiated hearsay testimony to the

discredit of sworn witness testimony in an unemployment compensation hearing, and whether a hearing officer errs by not enforcing subpoenas to produce evidence material to the issue of whether the claimant was terminated for just cause. For the following reasons, we reverse the decision of the court below and remand this matter for further proceedings.

{¶2} On November 4, 2011, Kappan filed a Notice of Appeal from the Unemployment Compensation Review Commission in the Portage County Court of Common Pleas.

{¶3} The facts of the case, as determined by the hearing officer, are as follows:

{¶4} Schneller LLC employed claimant [Kappan] as a burn laboratory technician from March 31, 2006, to May 9, 2011. In this position she had responsibility for maintaining files, specifications and testing of all incoming and outgoing products. This work also included quality assurance, research and development, and technical service.

* * *

{¶5} Claimant had previously demonstrated that she was able to perform the required work in a satisfactory manner. However, her job performance declined.

* * *

{¶6} One of claimant's job duties was [to] calibrate testing equipment. The employer reviewed the calibration completed by claimant for the months of April and May, 2011. This review of records

demonstrated that on twenty percent (20%) of the days claimant worked, she did not do daily calibration of the equipment as required. The review also demonstrated that on twenty-eight percent (28%) of the days during these months, the calibration of equipment was done improperly. As a result, the work had to be redone.

{¶7} On May 9, 2011, Schneller LLC discharged claimant for poor job performance.

{¶8} The hearing officer disallowed Kappan's Application for Determination of Benefit Rights, "as claimant was separated from employment under disqualifying conditions," i.e., "Schneller LLC discharged her for just cause in connection with work."

{¶9} Before the lower court, Kappan argued that the Review Commission's finding that she was discharged for just cause was not supported by the evidence. She further argued that the Review Commission erred by not enforcing subpoenas she had issued to Schneller prior to the review hearing. Kappan requested that Schneller produce "the actual computer data used to show that I had not completed the required calibrations," as well as the calibration records of other employees using the same equipment, and documentation regarding any changes to the equipment's programming during the relevant time period.

{¶10} At the hearing, Schneller failed to produce the subpoenaed records. The hearing officer allowed Kappan to make a proffer of what she thought the information would have demonstrated: "If I feel that I need that testimony or those documents to make a fair decision, I will put the matter back on the schedule, we will re-issue the

3

subpoenas, and expect the employer to produce that documentation." At the close of the hearing, the officer stated that the subpoenaed information was not necessary to render a fair decision.

{¶11} On January 7, 2013, the trial court issued an Order and Journal Entry, affirming the decision of the Review Commission.

{¶12} On February 4, 2013, Kappan filed her Notice of Appeal with this court. On appeal, Kappan raises the following assignment of error:

{¶13} "[1.] The Court of Common Pleas erred by failing to reverse the decision of the Unemployment Compensation Review Commission."

{¶14} "An appellate court may reverse the Unemployment Compensation Board of Review's 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 653 N.E.2d 1207 (1995), paragraph one of the syllabus; R.C. 4141.282(H). The duty of the appellate court is not to make factual findings or determine the credibility of the witnesses, rather, the court "is to determine whether the decision of the board is supported by the evidence in the record." (Citations omitted.) *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18, 482 N.E.2d 587 (1985). "This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in this court." *Tzangas* at 696.

{¶15} We reverse the decision of the Review Commission, not based on the relative credibility of the witnesses, but upon the basic unfairness of the proceeding, which compromised Kappan's right to due process.

{¶16} The Ohio Supreme Court has recognized:

4

**{¶17}** [F]ederal law mandates that state unemployment programs provide an "[o]pportunity for a fair hearing, before an impartial tribunal * * *." Section 503(a)(3), Title 42, U.S. Code. This statute has been interpreted to impose requirements which are the same as constitutional procedural due process requirements. *Camacho v. Bowling* (N.D. Ill. 1983), 562 F. Supp. 1012, 1020. Hence, any judicial analysis of the state's hearing procedures in this case must be conducted with a fundamental recognition that under the Fourteenth Amendment the cornerstone of due process, in the procedural sense, is the opportunity for a fair hearing. *Boddie v. Connecticut* (1971), 401 U.S. 371, 378.

*Henize v. Giles*, 22 Ohio St.3d 213, 215, 490 N.E.2d 585 (1986).

**{¶18}** Ohio law recognizes that "[h]earing officers have an affirmative duty to question parties and witnesses in order to ascertain the relevant facts and to fully * * * develop the record." R.C. 4141.281(C)(2).

**{¶19}** This court has recognized that "[t]he failure to allow a party to present witnesses or otherwise develop their case is grounds for reversing the decision of the review commission." *Dragon v. State Unemp. Comp. Rev. Comm.*, 11th Dist. Ashtabula No. 2005-A-0017, 2006-Ohio-1447, ¶ 21 (cases cited).

**{¶20}** In the present case, Kappan was terminated "for cause," i.e., poor job performance. Specifically, it was claimed that, over a two-month period, she failed to perform necessary calibrations to laboratory equipment 20 percent of the time, and did

so incorrectly 28 percent of the time. The only substantive issue for determination was whether, in fact, Kappan performed as Schneller claimed.

**{¶21}** Prior to the hearing, Kappan properly subpoenaed the information from Schneller that would confirm or disprove the allegations. Schneller did not comply with the subpoenas and offered no explanation for not doing so.

**{¶22}** Kappan testified that she calibrated the equipment every day; was unaware how it was possible to calibrate the equipment incorrectly; and, until terminated, was unaware that there was a problem with her calibrations.

**{¶23}** Human resource generalist, Patricia Knotts, testified on behalf of Schneller. Knotts testified that Kappan was terminated for not calibrating the testing equipment. Knotts did not establish a foundation for her testimony regarding Kappan's failure to properly calibrate the equipment. Knotts referred to "a report that the supervisor had to do," which showed that the calibrations were not done. The report itself was not in evidence. Knotts did not know how the calibration process worked.

**{¶24}** At the close of the testimony, the hearing officer declared, "I don't need to get that information from the subpoenas to make a fair decision." In response, Kappan reasserted her claim that she properly calibrated the equipment but could not "prove it" without the documentation subpoenaed from Schneller.

**{¶25}** Any reasonable assessment of these proceedings must conclude that Schneller presented nothing that could be considered "evidence" in support of its position that Kappan was terminated for just cause. The only witness to testify for Schneller could do nothing more than repeat the claim that Kappan had failed to calibrate the equipment. Knotts had absolutely no knowledge or reason to know

6

whether this claim was merited. For practical purposes, Knotts did nothing more than mimic the conclusion of the disciplinary report that Kappan was terminated for poor job performance.

{¶26} There is abundant case law "that it is unreasonable for a hearing officer to give more credence to uncorroborated hearsay evidence than to sworn testimony." (Citations omitted.) *Tomlinson v. Ohio Dept. of Job & Family Servs.*, 3rd Dist. Allen No. 1-09-02, 2009-Ohio-3414, ¶ 7. Here, Knotts' testimony does not even rise to the level of hearsay, inasmuch as she did not testify that she had actually seen the report to whose results she was testifying.

{¶27} The basic unfairness of crediting Schneller's non-evidence over Kappan's sworn testimony is compounded by the fact that Kappan duly subpoenaed the records that could prove or disprove the alleged "cause" of her termination. As noted above, it is the hearing officer's duty "to ascertain the relevant facts." It is to this end, i.e., the ascertaining of the relevant facts, that the officer is not strictly bound by the evidentiary rules. The purpose is to create, not circumvent, "an efficient method for ascertaining a claimant's entitlement to unemployment compensation benefits." *Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 43, 430 N.E.2d 468 (1982); *Owens v. Ohio Bur. of Emp. Servs.*, 135 Ohio App.3d 217, 221, 733 N.E.2d 628 (1st Dist.1999) ("[t]he hearing officer could not simply disregard evidence in the hands of the employer that the claimant had properly subpoenaed and that the employer had failed to provide").

{¶28} Kappan's sole assignment of error is with merit.

{¶29} For the foregoing reasons, we reverse the judgment of the lower court, affirming the Review Commission's determination, and remand this matter for further proceedings consistent with this opinion. Costs to be taxed against the appellee.


TIMOTHY P. CANNON, P.J., concurs,

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.


_____


CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.


{¶30} The majority opinion reverses the judgment of the trial court based upon its view that appellant did not receive a fair hearing. In particular, the majority maintains it was unreasonable for the trial court to affirm the hearing officer because the officer gave greater credence to uncorroborated testimony than appellant's sworn testimony. Further, the majority emphasizes the unfairness is compounded by the hearing officer's decision to disregard the enforcement of properly issued subpoenas. While I agree that the hearing officer's decision not to require production of subpoenaed documents is problematic, I cannot conclude, given the remaining circumstances of the case, appellant received an unfair hearing. I therefore respectfully disagree with the majority's conclusion.

{¶31} It is clear the hearing officer did not demand the subpoenaed reports; it is equally clear, however, he did not specifically refuse to enforce the subpoenas. To the contrary, appellant simply failed to specifically object to Schneller's failure to produce

the subpoenaed witnesses and documentation. Moreover, appellant did not question or object to the value of the proffering process. Also, appellant could have requested a postponement of the hearing until Schneller complied with the subpoenas. Instead of doing so, she voluntarily entered a proffer with the understanding that the witnesses or documents need only be produced if, in his discretion, the hearing officer deemed it necessary to resolve the issue. Given these circumstances, I would hold appellant's due process rights were not compromised.

{¶32} Moreover, I disagree with the majority's statement that Schneller produced no evidence to demonstrate just cause. Although it is true the hearing officer did not possess the subpoenaed calibration reports, it is also true that the hearsay nature of the information gleaned from the reports was corroborated by Schneller's human resources department through the testimony of Knotts; and the hearing officer also had a copy of the report that prompted appellant's discharge, which included documentation of appellant's errors regarding the calibration of the equipment. That disciplinary report provided:

{¶33} On Friday, May 6, 2011, while doing the Burn Lab accountability reports, Al Gordon the Burn Lab supervisor discovered that the OSU calibration requirements had not been performed as required by the "Operating procedure for OSU". [sic] Base[d] on calibration records for the months of April and May 2011, 20% of these days [appellant] did not do daily calibration, 28% of these days calibration was done improperly. This means that 48% of these days testing reports were not valid.

9

{¶34} The report, in conjunction with the documentary evidence of the formal reprimands appellant received and Knotts' testimony regarding appellant's problems between April and May calibrating the equipment, provided a reasonable and lawful basis for the officer's conclusion.

{¶35} Pursuant to R.C. 4141.29(D)(2)(a), an individual is not eligible for unemployment compensation benefits if the individual has been "discharged for just cause in connection with the individual's work."

{¶36} "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine, supra, at 17, quoting Peyton v. Sun T.V. & Appliances, 44 Ohio App.2d 10, 12 (10th Dist.1975). In Tzangas, supra, the Supreme Court of Ohio provided a four-pronged test for just cause termination:

{¶37} Unsuitability for a position constitutes fault sufficient to support a just cause termination. An employer may properly find an employee unsuitable for the required work, and thus to be at fault, when: (1) the employee does not perform the required work, (2) the employer made known its expectations of the employee at the time of hiring, (3) the expectations were reasonable, and (4) the requirements of the job did not change since the date of the original hiring for that particular position. Id. at 698-699.

{¶38} In this case, the hearing officer determined that, given the testimony and documentation submitted by Schneller, appellant failed to perform the required work in a satisfactory manner; he further found, based upon testimony, appellant was made

10

aware of the Schneller's expectations as a lab technician and those expectations were reasonable. The officer also found that the requirements for appellant's job did not change in the course of her employment. And, as a result, after following its progressive disciplinary policy of issuing three warnings, the fourth violation constituted just cause to discharge appellant in connection with her work. The hearing officer's conclusion was neither unlawful, unreasonable, nor against the manifest weight of the evidence.

{¶39} Pursuant to the foregoing, I would conclude the hearing before the commission was not unfair and the trial court did not err in affirming the Commission's decision. I therefore respectfully dissent.