[Cite as *Knapp v. Defiance Therapeutic Massage & Wellness Ctr.*, 2018-Ohio-1890.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

ALISSA M. KNAPP, ET AL.,

      APPELLEES,                                 CASE NO.  4-17-20

      v.

DEFIANCE THERAPEUTIC MASSAGE
& WELLNESS CENTER, LLC,                 O P I N I O N

      APPELLANT.

Appeal from Defiance County Common Pleas Court
Trial Court No. 16-CV-43656

**Judgment Affirmed**

Date of Decision:   May 14, 2018

APPEARANCES:

    *Mark S. Barnes* **for Appellant**

    *Eric A. Baum* **for Appellees**

**PRESTON, J.**

{¶1} Appellant, Defiance Therapeutic Massage & Wellness Center, L.L.C. ("Defiance Therapeutic"), appeals the judgment of the Defiance County Court of Common Pleas affirming the Unemployment Compensation Review Commission's ("Commission") determination allowing claimant-appellee's, Alissa M. Knapp ("Knapp"), application for unemployment compensation benefits. For the reasons that follow, we affirm.

{¶2} Knapp's employment as a massage therapist with Defiance Therapeutic was terminated on September 25, 2015. (Doc. No. 1, Ex. B). After her employment was terminated, Knapp filed an application for unemployment compensation benefits. (Doc. No. 4).

{¶3} On November 20, 2015, appellee, the Ohio Department of Job & Family Services ("ODJFS"), approved Knapp's application for unemployment compensation benefits. (*Id.*). On December 10, 2015, Defiance Therapeutic appealed ODJFS's decision approving Knapp's application for unemployment compensation benefits. (*Id.*). On December 30, 2015, ODJFS issued its redetermination reversing its initial determination allowing Knapp's application for unemployment compensation. benefits (*Id.*). On January 5, 2016, ODJFS issued an order vacating its December 30, 2015 redetermination. (*Id.*). That same day, it issued a redetermination allowing Knapp's application for unemployment

compensation benefits. (*Id.*). Defiance Therapeutic appealed ODJFS's redetermination on January 26, 2016. (*Id.*).

**{¶4}** On January 28, 2016, Defiance Therapeutic's appeal was transferred to the Commission. (*Id.*). After telephone hearings on February 22 and April 13, 2016, the Commission issued its decision on May 2, 2016 affirming ODJFS's determination. (*Id.*). On May 23, 2016, Defiance Therapeutic requested that the Commission review its May 2, 2016 decision. (*Id.*). On June 8, 2016, the Commission denied Defiance Therapeutic's request for review. (*Id.*).

**{¶5}** On July 6, 2016, Defiance Therapeutic appealed to the Defiance County Court of Common Pleas the Commission's denial of its request for review of its May 2, 2016 decision affirming ODJFS's determination allowing Knapp's application for unemployment compensation benefits. (Doc. No. 1).

**{¶6}** Defiance Therapeutic filed the administrative file on August 18, 2016. (Doc. No. 4). Defiance Therapeutic filed its brief on October 31, 2016. (Doc. No. 10). ODJFS filed its response to Defiance Therapeutic's brief on March 13, 2017. (Doc. No. 19). On April 18, 2017, Defiance Therapeutic filed its reply to ODJFS's response. (Doc. No. 22).

**{¶7}** On October 31, 2017, the trial court denied Defiance Therapeutic's appeal and affirmed the May 2, 2016 decision of the Commission. (Doc. No. 23).

{¶8} Defiance Therapeutic filed its notice of appeal on November 27, 2017. (Doc. No. 24). It raises one assignment of error for our review.

**Assignment of Error**

**The Trial Court Erred in Affirming the Decision of the Review Commission that Appellee Alissa M. Knapp was an Employee of Defiance Therapeutic, as Said Decision is Unlawful, Unreasonable, and Against the Manifest Weight of the Evidence.**

{¶9} In its assignment of error, Defiance Therapeutic argues that the trial court erred by affirming the Commission's decision approving Knapp's application for unemployment compensation benefits because the "Commission's decision finding [that Knapp] worked in covered employment at Defiance Therapeutic Wellness Center under R.C. 4141.01(B)(1) is unlawful, unreasonable, and against the manifest weight of the evidence." (Appellant's Brief at 22). That is, Defiance Therapeutic challenges the Commission's conclusion that Knapp was not an independent contractor of Defiance Therapeutic.

{¶10} "An applicant seeking unemployment compensation benefits submits to ODJFS an application for such benefits along with information in support of his or her claim." *Henderson v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 12AP-154, 2012-Ohio-5382, ¶ 5, citing *McGee v. Ohio Dept. of Job & Family Servs.,* 10th Dist. Franklin No. 09AP-680, 2010-Ohio-673, ¶ 9. "Initially, ODJFS makes findings of fact and conclusions of law as to whether the applicant is entitled to unemployment compensation benefits." *Id.*, citing *McGee* at ¶

-4-

9, citing R.C. 4141.28(B). "Such decision is subject to an appeal to the commission for a de novo hearing." *Id.*, citing *McGee* at ¶ 9, citing R.C. 4141.281(C)(1) and (3).

**{¶11}** "A party dissatisfied with the commission's final determination may appeal to the appropriate court of common pleas, which shall hear the appeal on the record certified by the commission." *Id.* at ¶ 6, citing *McGee* at ¶ 10, citing R.C. 4141.282(H).

> Pursuant to R.C. 4141.282(H), "[i]f the court [of common pleas] finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."

*Id.*, quoting *McGee* at ¶ 10.

**{¶12}** "This standard of review applies to all levels of appellate review in unemployment compensation cases." *Id.* at ¶ 7, citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696-97 (1995). "Applying the same standard of review at both the common pleas and appellate court levels does not result in a de novo review standard." *Id.*, citing *Tzangas* at 697. "In reviewing commission decisions, a court may not make factual findings or determine witness credibility." *Id.*, citing *Tzangas* at 696, citing *Irvine v. State Unemp. Comp. Bd. of*

-5-

*Rev.,* 19 Ohio St.3d 15, 18 (1985). "Factual questions remain solely within the province of the commission." *Id.*, citing *Tzangas* at 697. "Similarly, a court may not substitute its judgment for that of the commission." *Id.*, citing *McCarthy v. Connectronics Corp.*, 183 Ohio App.3d 248, 2009-Ohio-3392, ¶ 16 (6th Dist.), citing *Irvine* at 18. "The fact that reasonable minds might reach different conclusions is not a basis for reversing the commission's decision." *Id.*, citing *McGee* at ¶ 11, citing *Tzangas* at 696. "Instead, a court must 'determine whether [the Commission's] decision is supported by the evidence in the record.'" *Id.*, quoting *Tzangas* at 696, citing *Irvine* at 18. "Judgments supported by some competent, credible evidence on the essential elements of the controversy may not be reversed as being against the manifest weight of the evidence." *Id.*, citing *Houser v. Ohio Dept. of Job & Family Servs.,* 10th Dist. Franklin No. 10AP-116, 2011-Ohio-1593, ¶ 7, citing *Carter v. Univ. of Toledo,* 6th Dist. Lucas No. L-07-1260, 2008-Ohio-1958, ¶ 12, citing *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279 (1978), syllabus.

{¶13} "This court's focus is on the commission's decision, rather than on that of the common pleas court." *Id.* at ¶ 8, citing *Howard v. Electronic Classroom of Tomorrow*, 10th Dist. Franklin No. 11AP-159, 2011-Ohio-6059, ¶ 12, citing *Moore v. Comparison Mkt., Inc.*, 9th Dist. Summit No. 23255, 2006-Ohio-6382, ¶ 8. "Thus, our task is to review the commission's decision and determine

whether it is supported by evidence in the certified record and is unlawful, unreasonable or against the manifest weight of the evidence." *Id.*, citing *McGee* at ¶ 12.

**{¶14}** Accordingly, the issue before us is whether the Commission's determination that Knapp worked in covered employment with Defiance Therapeutic is against the manifest weight of the evidence because it is not supported by some competent, credible evidence, or, conversely, whether it is unlawful or unreasonable. *See Clark v. Ohio Dept. of Job & Family Servs.*, 2d Dist. Montgomery No. 25257, 2012-Ohio-5311, ¶ 7.

**{¶15}** On May 6, 2016, the Commission issued a written decision, which included the following pertinent findings of fact:

> [Knapp] began performing [massage therapy services for Defiance Therapeutic] with the understanding that she would be an independent contractor. [Knapp] did not sign an independent contractor agreement with Carrie Radzik [("Radzik")], managing member[,] but rather agreed to pay a share of the revenue she brought in, excluding tips. [Knapp] was given access to the facility via a security code and was able to set her own hours. [Knapp] was responsible for providing her own liability insurance. [Knapp] never

discussed the prospect of performing work at another facility and had the flexibility to work the hours she chose.

[Knapp] was asked to fill-in for the receptionist to answer the telephone or schedule appointments when the receptionist was not available. [Knapp] did not solely schedule appointments for herself when she filled in. [Knapp] was responsible for cleaning the linens she used and was asked to clean linens used by the other individuals who provided services. [Knapp] was informed as to a specific way to fold the linens. With respect to opening and closing, [Knapp] was informed of certain expectations which included opening and closing the blinds at or by certain times, turning on an outside light when leaving for the day and ensuring the back door is properly and completely shut.

During the period that [Knapp] provided services she was asked to pay Worker's [sic] Compensation premiums and was encouraged to attend regular staff meetings. During the time she provided services the employer introduced a handbook which contained expectations with respect to reporting for work no later than thirty minutes prior to their first appointment, an approval process for changing schedules, a corrective access procedure, checking facility

voicemail, and backroom cleaning responsibilities. The backroom responsibilities included cleaning the back area, labeling food in the refrigerator, and specific laundry instructions which included when laundry should be started, how to best dry the laundry and specific folding instructions.

[Knapp] brought some clients to the facility when she began performing services. She was required to complete documentation regarding the services which were placed in client charts. When [Knapp] was separated she was not permitted to remove client files, including information regarding the clients she brought to the facility in March, 2010.

(Doc. No. 1, Ex. B); (Doc. No. 4).

{¶16} Based on those facts, the Commission concluded that an employer-employee relationship existed between Defiance Therapeutic and Knapp within the meaning of the statute. In particular, based on the application of the 20 factors under Ohio Adm.Code 4141-3-05 (B), the Commission concluded that Defiance Therapeutic "did have the right to control" Knapp. (*Id.*); (*Id.*). Regarding the application of those 20 factors, the Commission reasoned:

[Defiance Therapeutic] operates a spa and the acupuncture services [sic] performed by [Knapp] were essential to the profitability of the

company. Those services were an integral part of the regular functions of the company. There were a number of examples of control that were not typical in a business to business relationship. [Knapp] answered the telephone when the receptionist was not present, scheduled others [sic] appointments, and performed filing as needed. She further cleaned and folded laundry not used by her and the client's [sic] she serviced, and was not permitted to take her client files when the employment relationship was severed. [Knapp] did not have a written independent contractor agreement but rather was governed by a manual which set forth opening and closing procedures, refrigerator cleaning, and other subjects that are not typically covered in a typical business to business relationship. In addition, [Knapp] engaged in a continuing relationship, was paid regularly, was not permitted to bring substitutes and had to pay money towards Worker's [sic] Compensation coverage.

(*Id.*); (*Id.*).

{¶17} After reviewing the record, we conclude that the Commission's determination that Knapp worked in covered employment with Defiance Therapeutic is not unlawful, unreasonable, or against the manifest weight of the evidence. "R.C. 4141.01(B)(1) defines 'employment' as 'service performed by an

individual for remuneration under any contract of hire, written or oral, express or implied, * * * unless it is shown to the satisfaction of the director that such individual has been and will continue to be free from direction or control over the performance of such service, both under a contract of service and in fact.'"

*Henderson*, 2012-Ohio-5382, at ¶ 11, quoting R.C. 4141.01(B)(1).

{¶18} Consistent with the statutory definition of "employment" under R.C. 4141.01, Ohio Adm.Code 4141-3-05(A) provides, in relevant part:

> "[A] worker is in employment when an 'employer-employee' relationship exists between the worker and the person for whom the individual performs services and the director determines that:
>
> (1)   The person for whom services are performed has the right to direct or control the performance of such services; and
>
> (2)   Remuneration is received by the worker for services performed."

*Evans v. Dir. Ohio Dept. Job & Family Servs.*, 10th Dist. Franklin No. 14AP-743, 2015-Ohio-3842, ¶ 15, quoting Ohio Adm.Code 4141-3-05(A).

{¶19} "Ohio Adm.Code 4141-3-05(B) sets forth 20 factors '[a]s an aid to determining whether there is sufficient direction or control present' to establish employment." *Id.* at ¶ 16, quoting Ohio Adm.Code 4141-3-05(B).

> Those factors, which "are designed only as guides" and "must be considered in totality," include:

(1) The worker is required to comply with the instructions of the person for whom services are being performed, regarding when, where, and how the worker is to perform the services;

(2) The person for whom services are being performed requires particular training for the worker performing services;

(3) The services provided are part of the regular business of the person for whom services are being performed;

(4) The person for whom services are being performed requires that services be provided by a particular worker;

(5) The person for whom services are being performed hires, supervises or pays the wages of the worker performing services;

(6) A continuing relationship exists between the person for whom services are being performed and the worker performing services that contemplates continuing or recurring work, even if not full time;

(7) The person for whom services are being performed requires set hours during which services are to be performed;

(8) The person for whom services are being performed requires the worker to devote himself or herself full time to the business of the person for whom services are being performed;

(9) The person for whom services are being performed requires that work be performed on its premises;

(10) The person for whom services are being performed requires that the worker follow the order of work set by the person for whom services are being performed;

(11) The person for whom services are being performed requires the worker to make oral or written progress reports;

(12) The person for whom services are being performed pays the worker on a regular basis such as hourly, weekly or monthly;

(13) The person for whom services are being performed pays expenses for the worker performing services;

(14) The person for whom services are being performed furnishes tools, instrumentalities, and other materials for use by the worker in performing services;

(15) There is a lack of investment by the worker in the facilities used to perform services;

(16) There is a lack of profit or loss to the worker performing services as a result of the performance of such services;

(17) The worker performing services is not performing services for a number of persons at the same time;

(18) The worker performing services does not make such services available to the general public;

(19) The person for whom services are being performed has a right to discharge the worker performing services;

(20) The worker performing services has the right to end the relationship with the person for whom services are being performed without incurring liability pursuant to an employment contract or agreement.

*Id.*, quoting Ohio Adm.Code 4141-3-05(B).

**{¶20}** "The director shall make a determination, based on the factors listed in this rule, as to whether or not an employment relationship exists for purposes of Chapter 4141. of the Revised Code." *Hasch v. Vale*, 5th Dist. Stark No. 2001CA00361, 2002 WL 1343262, *3 (June 17, 2002). "'The burden of proving entitlement to the independent contractor exemption is on the employer.'" *BNA Constr., Ltd. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 16AP-317, 2017-Ohio-7227, ¶ 21, quoting *Peter D. Hart Research Assocs., Inc. v. Admr. Ohio Bur. of Emp. Servs.*, 10th Dist. Franklin No. 95APE06-736, 1995 WL 765202, *3 (Dec. 28, 1995), citing *McConnell v. Admr. Ohio Bur. of Emp. Servs.*, 10th Dist. Franklin No. 95APE03-262, 1995 WL 584359, *3 (Oct. 5, 1995).

{**¶21**} Knapp testified at the February 22, 2016 telephone hearing. (Feb. 22, 2016 Tr. at 11). On examination by the hearing officer, she testified that she began work for Defiance Therapeutic in 2010 but did not have a written contract with Defiance Therapeutic. (*Id.* at 12). She assumed that she "was an independent contractor." (*Id.* at 13). As compensation, Knapp received 50 percent of the fees that her clients were charged for her services. (*Id.* at 12). She renegotiated her rate to 60 percent in July 2012. (*Id.* at 13). She testified that Radzik set the rate that she could charge her massage clients based on what Radzik "wanted for the company." (*Id.* at 26). She did not provide massage services for any other business during the time she worked for Defiance Therapeutic. (*Id.* at 12).

{**¶22**} Regarding her schedule, Knapp was permitted to "get 60 hours that [she] preferred and then [Radzik] would [schedule] accordingly as long as it fit with everybody else's schedule." (*Id.* at 25). She was required to "call the office and let the office manager know that [she] would not be making it in" on days that she needed to miss work and the office manager would reschedule her appointments. (*Id.* at 27). Knapp had to obtain Radzik's approval to take vacation time off. (*Id.*).

{**¶23**} Knapp was required to document "[c]harting" in the specific manner that Radzik required, which was beyond what she was required to do by the State. (*Id.* at 21). She further testified that "we would hand our charts to the office managers and if not done right, the charts were given back to us to, to complete

-15-

right." (*Id.*). She testified that she was "pressured by Defiance [Therapeutic] to do this certain continuing ed[udcation]." (*Id.* at 23). In particular, Knapp "would get a raise if [she] took this class that which was taught by [Radzik]." (*Id.*).

{¶24} According to Knapp, Defiance Therapeutic provided the materials that she utilized for massage. (*Id.* at 14). She did not have her own work space; rather, she "was bumped around to room to room [wherever] there was availability." (*Id.* at 14). Likewise, she was not permitted to decorate her work area. (*Id.* at 18). As a uniform, Knapp wore dark-colored scrubs because that was what Radzik wanted her to wear. (*Id.* at 16-17). She paid for her own liability insurance. (*Id.* at 38).

{¶25} In addition to massage, Knapp testified that she was responsible for providing ancillary services, including scheduling for other therapists, answering the phone, laundering linens, and conducting opening and closing procedures. (*Id.* at 15-16, 20). Knapp was required to attend staff meetings, which were held "during [her] time off so [she] had to come in during [her] time off" to attend the meetings. (*Id.* at 18). According to Knapp, she was disciplined for failing to attend those meetings and for bringing her daughter to those meetings during the times she could not find a babysitter. (*Id.* at 19). Knapp was also required to attend outside events, where she was expected to "solicit people walking by the tables [by] giving the information about the center as a whole." (*Id.* at 26).

**{¶26}** Knapp testified that she received a standards of practice manual in August 2015, which

goes from the introduction to the history of the center, a classification of independent contractor to employment policies, * * * to standards of conduct, work scheduled, absent lateness [sic], how to take meals and breaks, * * * dress code, soliciting and distribution, * * * any outside employment, * * * independent contractor termination and resignation, * * * the responsibilities of an independent contractor such as charting, laundry responsibilities, backroom, opening, closing, events, * * * inventory, * * * and then it goes to independent contractor benefits where you talk about, * * * how would it cost for retail, professional discounts, what kind of discount we can give to our family, to keeping up with our vendors' license, * * * that there are no benefits like holiday or how to take a vacation, who it has to be approved by, expenses, staff meetings, how events are supposed to happen, [and] how social media and advertising is supposed to happen * * *.

(*Id.* at 17).

**{¶27}** On examination by counsel for ODJFS, Knapp testified that, prior to receiving the manual, similar direction was provided to therapists through staff

meetings. (*Id.* at 30). She clarified that the policies and procedures were in place prior to the establishment of the manual; the manual codified those requirements. (*Id.* at 36). However, she testified that the manual contained new disciplinary procedures "for not charting" or "attending meetings." (*Id.*).

{¶28} Knapp testified that her employment with Defiance Therapeutic was an employer-employee relationship because she

> was expected to be loyal to the place of work, [she] was being paid by
> a paycheck on a bi-weekly basis, [she] was being told what to do and
> how to do it. [She] was being controlled through the threat of
> dismissal, [she] was being required to go to training or mandatory
> meetings and [required to obtain] approval on pretty much anything
> [she] wanted to do.

(*Id.* at 37).

{¶29} She testified that she was not compensated for providing the ancillary services; however, she testified that she was compensated for her work as a receptionist—which lasted approximately one year—at an hourly rate when she began working at Defiance Therapeutic. (*Id.* at 30-31). The continuing education that Knapp completed was not required for her massage license. (*Id.* at 31). When Knapp completed the continuing education, she did not receive a raise of a set

amount; rather, her percentage of commission was increased from 50 percent to 60 percent. (*Id.* at 32).

**{¶30}** Knapp purchased the "face covers for chair massage" as supplies and her uniform scrubs. (*Id.* at 32). She also purchased from Radzik a Defiance Therapeutic polo shirt. (*Id.*). Regarding advertising, Knapp testified that "all advertising design and pretty much what it said" "was done by" the office manager and Radzik. (*Id.* at 32). According to Knapp, "one time [she] tried to do a postcard, * * * but it was denied because it didn't have * * * the right * * * logo on it and it wasn't through Defiance Therapeutic Massage & Wellness Vista Print account and so it had to be done through that account for [her] to do it so [she] just gave up on it and didn't do it at all." (*Id.* at 32-33).

**{¶31}** Knapp testified that Defiance Therapeutic deducted workers' compensation insurance premiums from her paycheck. (*Id.* at 34-35). She testified that she did not obtain workers' compensation coverage as an independent contractor. (*Id.* at 35). She testified that she was told that she could not take time off a few times that she wanted to take off because other therapists were off during that time. (*Id.* at 35-36). Although she was not explicitly told that she could not work anywhere else during the time she was employed with Defiance Therapeutic, she assumed that she could not work elsewhere. (*Id.* at 33).

{¶32} Knapp went to Defiance Therapeutic after her termination to retrieve her belongings; however, Radzik refused to provide to Knapp her clients' files. (*Id.* at 34). Knapp never received her clients' files. (*Id.*).

{¶33} On examination by counsel for Defiance Therapeutic, Knapp testified that she typically determined the method that she would use in performing her massages, "unless [she] was [massaging] Ms. Radzik's clients, [Radzik] would tell [Knapp], what was always done on that client and what problem was going on * * *." (*Id.* at 40). She testified that she was able to offer special massage pricing. (Apr. 13, 2016 Tr., Vol. I, at 14). (*See also* ODJFS Ex. G). She could refuse to treat any client, she could terminate her relationship with Defiance Therapeutic, and Defiance Therapeutic could terminate its business relationship with her. (Apr. 13, 2016 Tr., Vol. I, at 15). She testified that she was not permitted to sell any other products, such as Mary Kay, on the premises of Defiance Therapeutic. (*Id.* at 20). She testified that she "got the cash [tips], like right away, * * * the check ones and credit card ones were given to [her] altogether in [her] check that [she was] given every two weeks." (*Id.* at 23).

{¶34} Knapp testified that she was free to donate her services to various charities at her discretion. (*Id.* at 24). She testified that she filed income tax as a sole proprietor from 2009 through 2014. (*Id.* at 25). She received her hourly receptionist pay on a 1099 form as well as her massage-therapist pay. (*Id.* at 28).

{¶35} Next, Michael Goosey ("Goosey") testified that he is a supervisor in the compliance section of ODJFS. (*Id.* at 31). On examination by counsel for ODJFS, Goosey testified that an investigation regarding Defiance Therapeutic was initiated after Knapp filed her application for unemployment compensation benefits because "Knapp was not reported" by Defiance Therapeutic as a person covered under its account. (*Id.* at 32). In particular, ODJFS investigated whether Knapp's employment with Defiance Therapeutic constituted "covered" employment. (*Id.* at 33). Goosey identified ODJFS Exhibits A and B as the initial compensation-benefits-rate-determination letters regarding Defiance Therapeutic. (*Id.* at 33-34). He also identified ODJFS Exhibits C through M as the evidence that ODJFS relied on in reaching its determination that Knapp's employment with Defiance Therapeutic constituted covered employment. (*Id.* at 34-50). He described the sections of the manual that evidence an employer-employee relationship as opposed to a business-to-business relationship. (*See id.* at 50-63).

{¶36} On examination by counsel for Defiance Therapeutic, Goosey clarified that the manual "is an employee handbook, an employee manual" based on "the totality of th[e] document." (*Id.* at 92). In particular, he testified, "It's not an independent contractor document and so when you look at all of the topics that are discussed within the * * * whole document, * * * you can point out page after page

that is clearly established direction and control implementation versus conveniences that were being offered and made available to the recipients * * *." (*Id.* at 92-93).

{¶37} Next, Melissa Constein ("Constein") testified that she was the office manager of Defiance Therapeutic from December 2013 through September 2015. (April 13, 2016 Tr., Vol. II, at 6). On examination by the hearing officer, she testified that Radzik informed her that the therapists were independent contractors. (*Id.* at 9).

{¶38} She testified that it "was [the therapists'] duties to fill in for" her on days that she was not at work. (*Id.* at 8). Those duties included, answering the phone, pulling their own charts, listening to messages, returning phone calls to schedule appointments for patients, and making reminder phone calls for the next day. (*Id.*). According to Constein, Knapp was able to set her own schedule; however, she was required to submit vacation requests to Constein for approval. (*Id.* at 7). Constein reviewed charts to "make sure all of the paperwork was filled out properly." (*Id.* at 8-9). Constein testified that she prepared Defiance Therapeutic's payroll and that the therapists were paid every two weeks. (*Id.* at 13). To prepare the payroll, Constein "would keep track of the patients, what the service was, what the tip amount was, what [the therapist's] commission was" and created a "spreadsheet and then emailed that to [Radzik] for her to * * * review and print payroll." (*Id.*).

**{¶39}** She testified that she was involved with the codification of the manual. (*Id.* at 9). According to Constein, Radzik downloaded a template from the internet and "changed the wording to make it fit [Defiance Therapeutic]." (*Id.* at 10).

**{¶40}** On examination by counsel for ODJFS, Constein testified that she and Radzik "searched on the internet for employee handbooks, * * * employee documents, * * * downloaded one that we felt fit best layout, [sic] * * * and changed the wording from employee to independent contractor" when they were drafting the manual. (*Id.* at 14). When the manual was provided to the therapists, they were expected to abide by its provisions and "sign it." (*Id.* at 15). According to Constein, the majority of the manual simply codified current procedures employed by Defiance Therapeutic—"the disciplinary actions were the only thing that * * * went a step further." (*Id.* at 16). Constein testified that the therapists "anticipate[d] being fired if they didn't meet [the manual's] requirements." (*Id.* at 17). She testified that she was considered an employee of Defiance Therapeutic and, as such, was not regulated by the manual; rather, her employment was governed by "a daily checklist of items [she] needed to handle," which was "just a couple of pages." (*Id.* at 14).

**{¶41}** On examination by counsel for Defiance Therapeutic, Constein testified that, when Defiance Therapeutic instituted the new software system and required the therapists to pay toward the cost of it, "it became that gray area of I'm required to pay software [sic] that I cannot take with me if I would leave as an

independent contractor * * * so why am I paying for it." (*Id.* at 20). She testified that it was an inconvenience for the therapists to be required to answer the phone and schedule appointments because when "a therapist was only there two to three hours a week, but was to know all of the ins and outs" of the services provided by other therapists, which was cumbersome. (*Id.* at 22). In particular, those therapists were required to know how acupuncture "functioned" and what procedure the acupuncturist utilized. (*Id.*). Likewise, those therapists were also required to know how "to set up a waxing, how and the details of it." (*Id.*).

{¶42} Radzik testified on behalf of Defiance Therapeutic. (*Id.* at 54). On examination by the hearing officer, Radzik testified that she did not have an independent contractor agreement with Knapp; however, she testified that she verbally informed Knapp that she was an independent contractor. (*Id.* at 55).

{¶43} According to Radzik, prior to the manual, therapists were expected to follow the policies and procedures contained in a "gray binder." (*Id.* at 56-57). She testified that she did not require the therapists to meet business quotas. (*Id.* at 58). She further testified that she did not prohibit the therapists from working at other establishments. (*Id.* at 59). Regarding cleaning the facility, she testified, "I knew that I had no disciplinary action that I could do to them because they were independent." (*Id.* at 61). Likewise, she testified that she never disciplined anyone. (*Id.*). She did not restrict the therapists from promoting their therapy services on

their own Facebook pages and allowed them to promote their services on the Defiance Therapeutic Facebook page. (*Id.* at 62). Regarding the business cards, she testified that she was not involved in the process of the therapists' business-card orders and the Defiance Therapeutic logo "was not to be on there." (*Id.* at 63).

{¶44} Radzik did not "have any say" as to Knapp's business hours or whom she accepted as a patient. (*Id.* at 70-71). She did not require Knapp to "get any certain certifications." (*Id.* at 70). Radzik testified that she did not prohibit Knapp from decorating her room and provided storage space for her to maintain her supplies in the office. (*Id.* at 67-68). She did not pay for Knapp's liability insurance. (*Id.* at 66).

{¶45} On examination by counsel for Defiance Therapeutic, Radzik testified that Knapp had "a lot of flexibility and freedom in her schedule." (*Id.* at 76). She described Knapp's frequent schedule changes. (*Id.* at 76-77). According to Radzik, if Knapp were an employee, she would not have permitted her to make so many changes to her schedule. (*Id.* at 78). Radzik testified that she did not supervise Knapp's massage-therapy practice and did not review her client notes for accuracy. (*Id.*). Although she did not discipline therapists for failing to complete patients' charts, she expected the therapist to complete the documentation required by the State. (*Id.* at 82).

{¶46} In exchange for Knapp paying a portion of her earnings to Defiance Therapeutic, Knapp received utilities, linens, supplies, a receptionist, and the use of massage tables. (*Id.* at 69-70). Radzik asserted that attendance at the staff meetings and outside events was not mandatory. (*Id.* at 78, 81-82). Indeed, she testified that Knapp did not attend all of the outside events and was not disciplined for not attending. (*Id.* at 82). She testified that she did not require therapists to receive her approval before advertising their services. (*Id.*).

{¶47} Radzik testified that the Ohio Bureau of Workers' Compensation ("BWC") conducted its own review of Defiance Therapeutic to determine if its therapists constituted employees or independent contractors, and the BWC concluded that the therapists were independent contractors. (*Id.* at 88).

{¶48} On examination by counsel for ODJFS, Radzik testified that, even though the manual described progressive discipline for failing to attend meetings and outside events, the progressive discipline was not enforced. (*Id.* at 99-100). She clarified that she created the 40-page manual because some of the therapists requested it. (*Id.* at 100-101). Notwithstanding her testimony that the therapists could post on Defiance Therapeutic's Facebook page, she agreed that the manual states that "[i]ndependent contractors are required to submit their information" to Radzik for review prior to posting it to the Facebook page. (*Id.* at 102). She testified

that the BWC did not review the manual as part of its review of Defiance Therapeutic. (*Id.* at 105).

{¶49} On appeal, Defiance Therapeutic advances five arguments challenging the Commission's determination. First, Defiance Therapeutic contends that the Commission's order is unlawful because it wrongly applied the statutory definition of employment in its analysis to include the ancillary services provided by Knapp. Second, Defiance Therapeutic argues that the Commission's order is unlawful "[b]ecause the hearing officer failed to articulate how he applied the 20 factors to [Knapp's] services as a massage therapist." (Appellant's Brief at 15). Third, Defiance Therapeutic contends that the Commission's decision that Knapp's work for Defiance Therapeutic constituted employment under R.C. 4141.01(B)(1) is unreasonable and against the manifest weight of the evidence based on the application of the factors under Ohio Adm.Code 4141-3-05(B). Fourth, Defiance Therapeutic contends that the Commission's decision is unreasonable and against the manifest weight of the evidence because "a review of the hearing officer's decision shows the hearing officer based his reasoning on the work of an acupuncturist, therapy services which [Knapp] did not perform." (*Id.* at 21). Finally, Defiance Therapeutic argues that the Commission's order is unreasonable and against the manifest weight of the evidence because the hearing officer relied

on hearsay evidence to conclude that Knapp "'was not permitted to bring substitutes.'" (*Id*. at 21-22, quoting Doc. No. 1, Ex. B).

**{¶50}** Defiance Therapeutic's first argument is meritless. R.C. 4141.01(B)(1) cannot be examined in a vacuum. *See, e.g.*, *Gress v. Gress*, 9th Dist. Wayne No. 95CA0069, 1996 WL 285373, *1 (May 29, 1996) (noting that the application of the division-of-marital-property statute cannot be examined in a vacuum, but must be considered under the totality of the circumstances); *Sabino v. WOIO*, *L.L.C.*, 8th Dist. Cuyahoga No. 102571, 2016-Ohio-491, ¶ 47 (noting that statements are not to be judged in a vacuum, but must be based on the totality of the circumstances). Thus, although the evidence in the record reflects that Knapp's rate of pay was based on her provision of massage-therapy services, it is clear from the totality of the testimony that Knapp's ability to practice massage therapy at Defiance Therapeutic and receive her rate of pay was conditioned on her performance of ancillary services. Accordingly, Defiance Therapeutic's argument that Knapp's performance of her massage-therapy duties should be examined separately from her performance of the ancillary services is erroneous.

**{¶51}** Also erroneous is Defiance Therapeutic's argument that the Commission's order is unlawful because "the hearing officer failed to set forth which, if any, of [the Ohio Adm.Code 4141-3-05(B) factors] compelled the Review Commission's decision." (Appellant's Brief at 15). Although the Commission's

order does not explicitly state which factors the hearing officer relied on, the Commission's order generally references the Ohio Adm.Code 4141-3-05(B) factors, and it is apparent from the analysis contained in the order that the hearing officer applied those factors to the testimony presented at the telephone hearings. Stated another way, it is clear that the hearing officer considered the Ohio Adm.Code 4141-3-05(B) factors because the order explicitly sets forth facts relevant to several of the factors. *See Misleh v. Badwan*, 9th Dist. Summit No. 24693, 2009-Ohio-6949, ¶ 9 (concluding that it was "clear" that the trial court considered the statutory factors "as it explicitly provided facts relevant to several of the factors"). *Compare Evans*, 2015-Ohio-3842, at ¶ 17 (discussing the facts that the trial court relied on in concluding that the 20 Ohio Adm.Code 4141-3-05(B) factors "established that Evans did not have the right to direct or control the drivers").

**{¶52}** Turning to Defiance Therapeutic's argument that the Commission's determination that Defiance Therapeutic directed and controlled Knapp's work is unreasonable and against the manifest weight of the evidence, we reject Defiance Therapeutic's argument. First, based on our conclusion above, the Commission's order is not unreasonable for analyzing the totality of the services Knapp performed in rendering its ultimate conclusion.

{¶53} Second, there is some competent, credible evidence supporting the Commission's decision. On appeal, in challenging the weight of the evidence supporting the Commission's conclusion, Defiance Therapeutic essentially requests that this court conduct a de novo review of the Commission's application of the Ohio Adm.Code 4141-3-05(B) factors. In other words, Defiance Therapeutic contends that this court should reweigh the facts in a light more favorable to it. "[I]t is not the function of this court to reweigh the evidence." *Cassaro v. Ohio Dept. of Job & Family Servs.*, 3d Dist. Crawford No. 3-16-08, 2016-Ohio-7643, ¶ 27, citing *Hicks v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 13AP-902, 2014-Ohio-2735, ¶ 13. "The fact that reasonable minds might reach different conclusions is not a basis for reversing the commission's decision." *Henderson*, 2012-Ohio-5382, at ¶ 29, citing *McGee*, 2010-Ohio-673, at ¶ 11. Indeed, this court is not permitted to substitute its judgment for that of the Commission; rather, this court is required to determine whether there is some competent, credible evidence supporting the Commission's conclusion. *See Cassaro* at ¶ 27.

{¶54} Although no individual factor or combination of factors under Ohio Adm.Code 4141-3-05 controls, the Commission's findings supporting its conclusion that Defiance Therapeutic directed and controlled Knapp are within the province of the Commission. *Compare Hasch*, 2002 WL 1343262, at *3 ("Although no individual factor in [Ohio Adm.Code] 4141-3-05 controls, the specific findings

of the Review Commission hearing officer that Vale was told to work 9AM to 5PM hours and directed where to report to work were within the province of said finder of fact."); *Henderson* at ¶ 29 ("Although no individual factor or combination of factors in R.C. 4141.01(B)(2)(k) controls, the specific findings of the commission that appellant declined Mid-Ohio's offer to be placed on the company's payroll, that Mid-Ohio did not set appellant's hours, and that appellant was free to perform outside work without penalty, were within the province of the commission."). "On close questions, '[w]here the [commission] might reasonably decide either way, the courts have no authority to upset the [commission's] decision.'" *Henderson* at ¶ 29, quoting *Irvine*, 19 Ohio St.3d at 18, citing *Charles Livingston & Sons, Inc. v. Constance*, 116 Ohio App. 437 (7th Dist.1961). Because the specific facts and circumstances of this case constitute a close question in which the commission might reasonably decide either way, we have no authority to upset the Commission's decision, and Defiance Therapeutic has not directed us to any authority permitting us to overturn the Commission's decision. *See Edan Farms, Inc. v. Toth*, 7th Dist. Mahoning No. 99-CA-185, 2000 WL 1809050, *3 (Dec. 5, 2000) ("These factors set out in Ohio Adm.Code 4141-3-05(B) are to be used by the [commission], but they are not necessarily the factors utilized by courts in determining whether reasonable minds could find that a claimant was or was not subject to direction and control over the performance of his services.").

{¶55} After reviewing the record, we conclude that there is some competent, credible evidence supporting the Commission's conclusion that an employer-employee relationship existed between Defiance Therapeutic and Knapp. First, the record reflects that the compliance division of ODJFS independently determined under Ohio Adm.Code 4141-3-05(B) that an employer-employee relationship existed between Defiance Therapeutic and Knapp. Moreover, there was significant testimony presented at the telephone hearings regarding the manual that Knapp was expected to adhere to. Although the manual was implemented in mid-2015, the record reflects that a document that was substantially similar to the manual was in existence prior to the creation of the manual. Radzik eventually updated the manual by editing an "employee" manual template that she found on the internet. The manual directs when, where, and how duties are to be performed. The record reflects the duties beyond massage therapy that Knapp was expected to perform as part of her relationship with Defiance Therapeutic, including administrative activities for other therapists working at Defiance Therapeutic; community laundry; and specific opening and closing procedures.

{¶56} Our review of the record also reveals that Defiance Therapeutic required that Knapp comply with the regulations imposed on massage therapists. *Compare Miracle Home Health Care, L.L.C. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 12AP-318, 2012-Ohio-5669, ¶ 25 ("Because federal and

state law mandates particular training and documentation, Miracle imposes those requirements on its home caregivers. The fact that federal and state law motivated Miracle to adopt the requirements at issue does not negate the control and direction that Miracle exercises in enforcing the requirements."). Moreover, the record reflects that Knapp was required to complete a specific continuing-education course to qualify for a raise.

{¶57} There was testimony presented that Knapp was required to receive Radzik's approval for her schedule, vacation, and advertising. *See Edan Farms*, 2000 WL 1809050, at *5 (Donofrio, J., concurring) (concluding that the determination that Toth was an employee rather than an independent contractor was supported by some competent, credible evidence because, in part, the record reflected that Edan Farms, Inc. "exercised significant control over Toth's work schedule"). Further, Knapp was expected to attend regular staff meetings, which occurred on her days off, and Knapp was disciplined for failing to attend and for bringing her daughter to those meetings. She was expected to wear specific attire and to hold herself out as a representative of Defiance Therapeutic.

{¶58} The record further reflects that Knapp engaged in a continuing relationship with Defiance Therapeutic from 2010 through 2015. Knapp received a paycheck from Defiance Therapeutic every two weeks. Although she immediately received cash tips, tips paid by check or credit card were included in the paycheck

that she received from Defiance Therapeutic. Further, group workers' compensation premiums were deducted from her paycheck. When her relationship with Defiance Therapeutic was terminated, Knapp was not permitted to obtain her client's files.

**{¶59}** For these reasons, there is some competent, credible evidence supporting the Commission's determination that Knapp worked in covered employment with Defiance Therapeutic—namely, there is some competent, credible evidence that Defiance Therapeutic exercised direction and control over Knapp. As such, the Commission's decision is not against the manifest weight of the evidence.

**{¶60}** Although we disapprove of the apparent carelessness of the Commission's order, Defiance Therapeutic's fourth argument does not warrant reversal of the Commission's decision. *See Orr v. State Med. Bd. of Ohio*, 10th Dist. Franklin No. 97APE09-1170, 1998 WL 151122, *3 (Mar. 31, 1998) (concluding that "a simple misstatement of the law that does not affect the outcome of the case does not necessitate a remand to an administrative agency"). Knapp's application for unemployment compensation is one of two applications for unemployment compensation concerning Defiance Therapeutic. The other application for unemployment compensation concerned an acupuncturist, Andrea Cline ("Cline"). The particular hearing officer that determined Knapp's application

also determined Cline's application. Under his "reasoning" section, it appears that the hearing officer carelessly copied the reasoning section of the order pertaining to Cline. In particular, as we referenced in part above, the reasoning section of the order regarding Knapp states, in relevant part, that Defiance Therapeutic "did have the right to control the claimant performing acupuncture" and "the acupuncture services performed by the claimant were essential to the profitability of the company." (Doc. No. 1, Ex. B); (Doc. No. 4).

{¶61} Those misstatements amount to harmless error. *Compare State ex rel. Brown v. Indus. Comm.*, 10th Dist. Franklin No. 13AP-763, 2014-Ohio-3044, ¶ 13 (concluding that the commission's misstatement "amounted to harmless error and would not support mandamus relief"), citing *State ex rel. Little v. Indus. Comm.*, 10th Dist. Franklin No. 11AP-1110, 2013-Ohio-282, ¶ 6 (concluding that a "typographical error" was "an inadvertent and harmless misstatement" and "not grounds for mandamus relief"); *Talarek v. Walls*, 9th Dist. Lorain No. 17CA011158, 2018-Ohio-1174, ¶ 10 (concluding that the trial court's misstatement was harmless because there was "no violation of a substantial right as a result" since the trial court correctly analyzed the "tax foreclosure action"). *See* Civ.R. 61; *Giles v. F & P Am. Mfg., Inc.*, 2d Dist. Miami No. 2004-CA-36, 2005-Ohio-4833, ¶ 36 (applying harmless-error analysis to an unemployment-compensation case). Notwithstanding the hearing officer's misstatements, it is clear from the totality of

the order that the hearing officer reviewed *Knapp's* employment. *See State ex rel. Brown* at ¶ 13 (concluding that "despite the commission's misstatement," it was "apparent" from the totality of the order that the commission "was not revisiting the employer's request for reconsideration, but rather was sua sponte invoking its continuing jurisdiction").

**{¶62}** Moreover, as we concluded above, Defiance Therapeutic failed to prove that the Commission's order is not supported by some competent, credible evidence. In other words, even severing the hearing officer's misstatements from the order does not render the Commission's ultimate conclusion against the manifest weight of the evidence. *See State ex rel. Barnett v. Indus. Comm.*, 10th Dist. Franklin No. 14AP-628, 2015-Ohio-3898, ¶ 11-12 (concluding that the hearing officer's "incorrect statement" was severable from the rest of the order). Therefore, although the hearing officer's misstatements constitute error, the error did not prejudice Defiance Therapeutic. *See Durgan v. Ohio Bur. of Emp. Serv.*, 110 Ohio App.3d 545, 553, (9th Dist.1996) ("To constitute reversible error, it is necessary that the error affects the substantial rights of the complainant. Prejudice has not been shown in this case."), citing Civ.R. 61; *Giles* at ¶ 36 ("Therefore, we find that even if it were error to allow the introduction of the letters during the second hearing, this error was not prejudicial to Giles.").

{¶63} In addition, based on our review of the record, it is arguable that Defiance Therapeutic invited the error. *See Miller v. Defiance Regional Med. Ctr.*, 6th Dist. Lucas No. L-06-1111, 2007-Ohio-7101, ¶ 37 (noting that, under the invited-error doctrine, "a party may not take advantage of an alleged error that the party induced or invited the trial court to make" and that "[i]nvited error occurs when trial counsel is 'actively responsible' for the trial court's error"), citing *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 471 (1998) and *State v. Woodruff*, 10 Ohio App.3d 326, 327 (2d Dist.1983), and quoting *State v. Campbell*, 90 Ohio St.3d 320, 324 (2000). At least twice during the telephone hearings, counsel representing Defiance Therapeutic asked questions relative to Cline's employment as an acupuncturist. (*See* Apr. 13, 2016 Tr., Vol. I, at 77, 90). That is, counsel for Defiance Therapeutic questioned Goosey regarding Defiance Therapeutic's website's promotion of acupuncture and questioned Goosey about whether he found "anything in that independent contractor manual specific to the provision of acupuncture services." (*Id.*).

{¶64} Finally, we reject Defiance Therapeutic's argument that the hearing officer erroneously relied on hearsay evidence in the form of Knapp's handwritten answers to a ODJFS questionnaire regarding the details of Knapp's employment. (*See* ODJFS Ex. G). "As a general rule, administrative agencies are not bound by the strict rules of evidence applied in court." *MNH Truck Leasing Co., LLC v. Dir.,*

*Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin Nos. 16AP-301, 16AP-302, and 16AP-303, 2017-Ohio-442, ¶ 12, citing *H.K. Trading Ctr., Inc. v. Liquor Control Comm.*, 10th Dist. Franklin No. 09AP-293, 2010-Ohio-913, ¶ 41. "For example, '[s]tatements or evidence that would be excluded as hearsay elsewhere are admissible in an administrative proceeding where they are not inherently unreliable and are sufficient to constitute substantial, reliable, and probative evidence.'" *Id.*, quoting *Harr v. Jackson Twp.*, 10th Dist. Franklin No. 10AP-1060, 2012-Ohio-2030, ¶ 24, fn. 1, and citing *Rudd v. Ohio Dept. of Job & Family Servs.*, 2d Dist. Miami No. 2015-CA-9, 2015-Ohio-3796, ¶ 14.

{¶65} Notwithstanding the general rule, Defiance Therapeutic argues that it was unreasonable for the hearing officer "to rely on the hearsay questionnaire where there are live witnesses to elucidate the issue by way of testimony * * *." (Appellant's Brief at 22). In support of its argument, Defiance Therapeutic contends,

> "[W]here the sworn testimony of a witness is contradicted only by hearsay evidence, to give credibility to the hearsay statement and to deny credibility to the [individual] testifying in person is unreasonable. * * * Thus, any weight to be given the * * * hearsay is clearly outweighed by * * * sworn testimony at the hearing before the [hearing officer]."

*Tomlinson v. Ohio Dept. of Job & Family Servs.*, 3d Dist. Allen No. 1-09-02, 2009-Ohio-3414, ¶ 7, quoting *Taylor v. Bd. of Rev.*, 20 Ohio App.3d 297, 299 (8th Dist.1984). Defiance Therapeutic's argument is meritless—that is, the hearing officer did not rely on the questionnaire over testimony presented during the telephone hearings. Indeed, Defiance Therapeutic points us to no testimony, and we see none, contradicting the hearing officer's conclusion that Knapp was not permitted to bring substitutes.

{¶66} Likewise, the hearing officer did not err in relying on the questionnaire because it is not inherently unreliable. "When evidence is admitted despite being hearsay, the trier of fact must consider whether the evidence is reliable enough to be considered substantial and probative." *Rudd* at ¶ 14, citing *In re Petition for Annexation of 162.631 Acres*, 52 Ohio App.3d 8, 15 (10th Dist.1988). "Evidence is reliable if it 'can be confidently trusted' and there is 'a reasonable probability that the evidence is true.'" *Id.*, quoting *Beachland Ents. Inc. v. Cleveland Bd. of Rev.*, 8th Dist. Cuyahoga No. 99770, 2013-Ohio-5585, ¶ 63-34. "The reliability of evidence goes to its weight, not its admissibility." *Id.*, citing *Farran v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 99851, 2014-Ohio-823, ¶ 5.

{¶67} Because Knapp testified during the telephone hearings, she was subject to examination by the hearing officer, counsel for ODJFS, and counsel for Defiance Therapeutic. As such, the hearing officer was in the best position to judge

her credibility. *See In re Green Village Skilled Nursing Ctr.*, 10th Dist. Franklin No. 12AP-91, 2012-Ohio-3769, ¶ 24 (noting that an appellate court may not substitute its judgment for that of an administrative agency as to the credibility of witnesses and the weight to be given to the testimony). Moreover, neither party objected to the admission of the questionnaire into evidence. (*See* Apr. 13, 2016 Tr., Vol. II, at 119-120). Accordingly, the reliability of the questionnaire that Knapp completed was within the province of the hearing officer. Therefore, we conclude that the hearing officer did not err in relying on the questionnaire.

{¶68} Further, the questionnaire is not dispositive of the Commission's decision because it supports only one fact—that Knapp was not permitted to bring substitutes. As such, even if that fact is removed from consideration, as we discussed above, the Commission's ultimate decision is supported by some competent, credible evidence. *Compare MNH Truck Leasing Co.*, 2017-Ohio-442 at ¶ 15 ("Even if the testimony of the attorney is removed from consideration here, the exhibits, affidavits, and Petrlich's own testimony support the decision of the [Commission]."). For these reasons, the Commission's decision is not unreasonable or against the manifest weight of the evidence in this respect. *Compare Binger v. Whirlpool Corp.*, 110 Ohio App.3d 583, 589 (6th Dist.1996) (noting that findings of the Commission that rely on evidence that might constitute hearsay evidence under the Rules of Evidence are "lawful so long as such evidence is given its proper

weight"), citing *Campion v. Ohio Bur. of Emp. Servs.*, 62 Ohio App.3d 897 (8th Dist.1990).

**{¶69}** We conclude that the Commission's order is not unlawful, unreasonable, or against the manifest weight of the evidence. Therefore, the trial court did not err by affirming the Commission's decision.

**{¶70}** Defiance Therapeutic's assignment of error is overruled.

**{¶71}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**